[Civ. No. 21381. Second Dist., Div. One. Mar. 20, 1956.]

RODOLFO ENDARA et al., Respondents, v. CITY OF CULVER CITY et al., Appellants.

34

M. Tellefson, City Attorney, for Appellants.

Robertson, Harney, Drummond & Dorsey and William M. Poindexter for Respondents.

FOURT, J.—Plaintiffs brought an action for injunctive relief. The amended complaint set forth generally that the plaintiff Endara was the owner of certain property in the defendant city; that the two plaintiff corporations were lessees of the property in question; that the defendants threatened to arrest and annoy the plaintiff tenants; that the defendants directed to the plaintiffs a notice to the effect that the business carried on by the corporate plaintiffs at the property in question was in violation of Culver City Zoning Ordinance Number CS-147, and plaintiffs would be subject to the penalties of such ordinance. Plaintiffs further set forth that the building in question was constructed in 1928, as an industrial building, and has never been used for other than general manufacturing, industrial or storage purposes, and that the use has never been discontinued or abandoned.

Defendants answered by denying generally and setting

forth that the use made by the plaintiffs was in violation of the zoning ordinances.

Evidence was taken and the court, pursuant to stipulation, viewed the premises and the area surrounding the property in question, watched and listened to the operations of plaintiffs and observed the traffic and other matters of concern in reference to the various contentions of the parties.

After trial the court made findings of fact and conclusions of law generally sustaining the plaintiffs' contentions, and made a judgment enjoining and restraining the defendants from interfering with the present use of the premises in question.

Defendants appealed from the judgment.

A brief résumé of the facts is as follows. The property in question, located at 4037 Elenda Street, Culver City (hereinafter referred to as ''4037''), is owned by plaintiff Endara and leased to the remaining plaintiffs, who have occupied the same since January, 1954. The property immediately adjoining 4037 to the north, known as 4031 Elenda Street (hereinafter referred to as ''4031''), also is owned by plaintiff Endara, and used for light manufacturing and storage purposes by the corporate plaintiffs.

On 4031 there are stucco buildings with cement floors, built in 1928, which have been leased to the corporate plaintiffs for several years, and used primarily for laminating resin sheets. Prior to such use by the corporate plaintiffs, the buildings were used, excepting for short vacancies, for industrial and storage purposes.

In 1928, after the construction of the buildings on 4037, the premises were occupied by California Spanish Tile Company and used to manufacture tile, ceramics and like items with the usual equipment required for such operations. A written stipulation was entered into wherein the parties set forth a description of the operations performed in making tile, including the use of dump trucks, hauling of sand and crushed rock and cement and the storage of such items at 4037, also a description of the process of mixing in large vats, the use of press molds, and the use of electrical saws and cutting machines, welding outfits, boilers and other matters.

Since 1937, with few exceptions, the property at 4037 had been used in conjunction with the premises at 4031 largely for storage purposes. From the latter part of 1933 to De-

cember, 1937, the property was owned by Security First National Bank. The bank leased the premises to Valencia Spanish Tile Company. Plaintiff Endara acquired the property in 1945. During the period prior to plaintiff's acquiring the premises, the plant was continued in use in manufacturing and storage of raw materials, work in process and finished products. During the war the operations were restricted, but the plant remained open and shipments were made. Since Endara acquired the property it has been occupied by Valencia Floor Tile Company, Colored Cement Tile Company and Lacy and Fox, Inc., and during all of the time to January, 1954, was used for the purpose of manufacturing tile ceramics and for the storage of raw materials and finished products.

On February 8, 1937, there was adopted by the city a zoning ordinance, No. 458, which included a zoning map and divided the city into various zones. On March 24, 1952, there was adopted by the city a zoning ordinance, Number CS-147, which repealed Ordinance Number 458, and which is now in effect, and, with certain amendments, is now the zoning ordinance of the city, governing the use of land and structures thereon.

At the insistence of the city, Endara filed an application for variance on November 3, 1948, wherein he requested an exception permitting the premises to be used for manufacturing tiles and ceramics products. On November 8, 1948, the city council granted a variance to use the premises at 4037 to manufacture tile and ceramics, together with a permit to Lacy and Fox, Inc., as lessees, to carry on the business.

On January 19, 1954, plaintiff Culver Hydro-Press, Inc., filed a petition for variance with the planning commission of the city, covering 4037, requesting permission for storage and light manufacturing and expansion of existing operations. Petitioner had no operations previously in 4037, and when referring to expansion, meant its operations at 4031, which place was not involved in this proceeding. The operations at 4031 were under a variance previously granted by the defendant city. The prior tenant of 4037 vacated in December of 1953, and petitioner became the tenant in January, 1954. The petitioner's variance application, in question, came on to be heard before the planning commission and that body recommended the denial of the petition. Thereafter, the applicant

filed its notice of appeal to the city council, a hearing was held at which Endara and counsel were all present and presented arguments in support of the appeal, and thereafter the petition was denied and the notice to plaintiffs to discontinue the use of the premises at 4037 for storage and manufacturing purposes was served.

The corporate plaintiffs are using the buildings presently, substantially as follows: about 75 per cent of the floor space is for storage of raw materials, supplies and finished products; about 12 per cent of the floor space is partitioned off and given over to actual production of laminated sheets, in this latter space there is located and used a hydraulic press. After the sheets are accumulated they are put through a trimming operation. Shipments do not involve any dump trucks or trucks and trailers, but plaintiffs use small stake trucks. Masonite, which is the largest volume item, is trucked in by common carrier truck once or twice a month. An area about the size used for actual productive operations is given over to a laboratory operated by one man, a chemist. The total work force is no greater than that throughout the years. The equipment is hooked up to preexisting gas, water and power lines. Since February 8, 1937, when Ordinance 458 was adopted, there has been no enlargement of the area used for industrial and storage purposes. The plant has not at any time been used for nonindustrial purposes, excepting for temporary vacancies. No physical change, other than necessary maintenance and repair, has been made in the building since 1937, except as permitted by the city. The present depreciated value of the building on 4037 is $15,000, aside from the value of the land. The land, for industrial purposes, is reasonably worth from $1.00 to $2.00 per square foot, and there are about 16,500 square feet of land involved. If Endara is required to convert to multiple or single dwelling units he would suffer a substantial loss.

The applicable city ordinance provides in Sections 14.05 (A & B), 2.35, 2.36 and 2.48 as follows:

"Section 14.05 Non-Conforming Buildings and Uses

. . . . . . . . . . . . . .

"A. Any such non-conforming building or structure may be continued and maintained provided there is no physical change other than necessary maintenance and repair in such building or structure except as permitted in other Sections of this Ordinance.

"B. Any such non-conforming use may be maintained and continued, provided there is no increase or enlargement of the area, space or volume occupied or devoted to such non-conforming use."

"Section 2.35 'Non-Conforming Building'

"A building or structure or portion thereof conflicting with the provisions of this Ordinance applicable to the zone in which it is situated."

"Section 2.36 'Non-Conforming Use'

"The use of a structure or premises conflicting with the provisions of this Ordinance."

"Section 2.48 'Use'

"The purpose for which land or building is designed, arranged or intended, or for which either is or may be occupied or maintained."

■ A nonconforming use is not restricted to the identical particular use which was in existence at the time of the enactment of the zoning ordinance but embraces any use substantially the same or similar. The adoption of more modern instrumentalities, suitable in carrying on a business should not, in legal contemplation, work a change of use. The trial court heard the testimony and observed the property and the plant in operation and found that the building was designed and intended for manufacturing and storage purposes; that the premises had been substantially continuously used for such purposes; that there had not been any increase or enlargement of the space devoted to industrial and storage use; that there had been no abandonment of the nonconforming use and that the present use is substantially the same as before the adoption of the ordinances. ■ No error has been specified in such findings and they are presumed to be true.

Appellants contend, among other things, that the plaintiffs had no recourse to the courts when the defendants threatened to prevent plaintiffs from using the building for industrial and storage purposes. There is no provision in the ordinance for administrative hearings to determine if a nonconforming use exists. It only provides a procedure for relief when it is assumed that there is a nonconforming use which is excepted from the provisions of the ordinance. Here the plaintiffs exhausted whatever administrative remedy they had. The question is not whether the variance should or should not have been granted, rather, it is the construction of the ordinance and the constitutionality of its application.

Appellants point out that Endara has no standing in court since he personally failed to exhaust his administrative remedies. The court found that the interest of all the plaintiffs was substantially the same and a separate application by Endara would have been futile. No error is assigned to this finding and we presume it to be supported by the evidence.

█ A zoning ordinance cannot unfairly discriminate against a particular parcel of land. █ If the general scheme of the zoning is sound and valid, nevertheless the courts may properly inquire as to whether the scheme of classification and districting has been applied fairly and impartially in each instance. (*Reynolds* v. *Barrett*, 12 Cal. 2d 244, 251 [83 P.2d 29].)

The court said in *Bernstein* v. *Smutz*, 83 Cal.App.2d 108, 117-118 [188 P.2d 48], the following:

". . . It is always open to interested parties to contend that the legislative body has gone beyond its constitutional power. The question is whether the police power can be stretched as far as was done in this case. In *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321, 1324], Justice Holmes said (p. 1325) : 'The protection of private property in the 5th Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the 14th Amendment. *Hairston* v. *Danville & W. R. Co.*, 208 U.S. 598, 605 [28 S.Ct. 331, 52 L.Ed. 637, 639, 13 Ann.Cas. 1008]. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.'

"In *Matter of Application of Throop*, 169 Cal. 93 [145 P. 1029], it was said (p. 99) : 'As stated by the supreme court of the United States in *Dobbins* v. *Los Angeles*, 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169], ". . . it is now thoroughly well settled by decisions by this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power,

or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional right to carry on a lawful business, to make contracts, or to use and enjoy property.'' ' To the same effect, *People* v. *Hawley,* 207 Cal. 395, 410, 411 [279 P. 136]; *Del Fanta* v. *Sherman,* 107 Cal.App. 746, 749 [290 P. 1087]; *Bank of America* v. *Town of Atherton,* 60 Cal.App.2d 268, 273 [140 P.2d 678]; *American Paint Co.* v. *McCune,* 67 Cal.App.2d 583, 585 [155 P.2d 123]. The court in *Miller* v. *Board of Public Works,* 195 Cal. 477, 489 [234 P. 381, 38 A.L.R. 1479], made these pertinent observations: 'It cannot be gainsaid, however, that many municipalities, evidently upon the theory that zoning is a panacea for civic ills, have, under the guise of zoning, sought to enact and enforce unreasonable and discriminatory ordinances. Some of these attempted regulations have been palpably for the exclusive and preferential benefit of particular localities. The duty, therefore, devolves upon the courts to determine in each instance whether or not the ordinance, either in whole or in part, is invalid.' ''

In the case of *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 216 [93 P.2d 93], the court said:

''Also, the police power must be applied to existing conditions. (*Miller* v. *Board of Public Works, supra.*) 'The principle that a police regulation, valid when adopted, may become invalid because in its operation it has proved to be confiscatory, carries with it the recognition of the fact that earlier compliance with the regulation does not forfeit the right of protest when the regulation becomes intolerable.' (*Abie State Bank* v. *Bryan,* 282 U.S. 765 [51 S.Ct. 252, 75 L.Ed. 690].) Where conditions have changed since the legislative action was taken, 'statutes and ordinances, which, after giving due weight to the new conditions are found clearly not to conform to the Constitution, of course, must fall.' (*Euclid* v. *Ambler Realty Co., supra* [272 U.S. 365 (47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016)].) The question, therefore, is whether under the facts shown by the appellant his rights are now being invaded by the existence and maintenance of the ordinance.''

In the case here plaintiffs' property is immediately adjacent to an industrial zone. In the immediate future there will be a large industrial establishment in the zone all along the west and rear adjoining the property. If the ordinance were construed to deny the plaintiffs the right

to continue the present use of their property it would, in our opinion, be arbitrary and unreasonable.

The judge, in this case, went to the premises, saw the workings at the plant, heard the noise, smelled whatever odors there were, saw the traffic and all of the other facts and circumstances involved. From what he gathered he came to the conclusions heretofore set forth as to the facts. It was said in *Estate of Sullivan*, 86 Cal.App.2d 890, at page 895 [195 P.2d 894] : "When the trial judge views the premises in question during a trial what he sees is not a part of the transcript of the record but is independent evidence which may be considered by him in arriving at his decision and which this court will assume supports the findings. [Citing cases.]"

We believe that in this particular case, injunctive relief was proper. The ordinance makes no provision for revocation of nonconforming uses or for any hearings or findings in connection therewith.

Judgment affirmed.

Doran, Acting P. J., concurred.

A petition for a rehearing was denied April 18, 1956, and appellants' petition for a hearing by the Supreme Court was denied May 15, 1956.