[Civ. No. 6171. Fourth Dist. Apr. 21, 1960.]

PARAMOUNT ROCK COMPANY, INC. (a Corporation) et al., Appellants, v. COUNTY OF SAN DIEGO et al., Respondents.

Robert Thorn, Kaminar, Sorbo, Andreen, Thorn & Gallagher and Gerald L. Christensen for Appellants.

Henry A. Dietz, County Counsel, and Robert G. Berrey, Deputy, for Respondents.

COUGHLIN, J.—This is an appeal from a judgment arising out of a proceeding contesting the validity of a zoning ordinance of the county of San Diego and its applicability to certain land.

Paramount Rock Company, Inc., hereinafter referred to as "Paramount" is the owner, and the Sierra Sand Company, hereinafter referred to as "Sierra," is the lessee of 76 acres of land in a river bed in the unincorporated area of San Diego County upon which is located a sand and gravel pit, a concrete premixing plant used in the preparation of ready-mix cement, a rock-crushing plant, a tailings pool area, rest rooms, a shop, an employee's lunch room, and a quonset hut.

The site contains large deposits of sand suitable for use in the preparation of plaster and concrete. A sand pit has been operated thereon since 1916, resulting in the removal of sub-

stantial quantities of sand. However, no rock or gravel for use in making concrete exists on the property.

On August 9, 1948, the site became subject to San Diego County Ordinance Number 593 (New Series), as amended by Ordinance Number 786 (New Series), which prohibited its use for the ''operation of rock quarries, sand and gravel pits, rock crushing plants or stationary asphalt paving plants unless a permit therefor had been granted by the Board of Supervisors.'' However, without objection, the site continued to be used as a sand pit for the purpose of removing sand therefrom.

In November, 1955 ''Sierra'' commenced construction of a concrete premixing plant on the property, and in January, 1956 completed its construction and began its operation. No permit to operate was required therefor as this type of plant was not within the scope of Ordinance Number 593.

''Sierra'' is engaged in the ready-mix concrete business. Its production operation involves the premixing of sand, crushed rock, gravel and cement in a dry state which, after mixing, is loaded into trucks equipped to mix the contents with water to form concrete in the course of delivery. During the period between January, 1956 and June, 1958 sand was obtained from the site, transported by truck to a sand washing and processing plant located on nearby property of another owner, washed and processed, and then returned by truck to the site and placed in a hopper; gravel and crushed rock were purchased from rock crushers located outside of and transported by truck to the site and placed in a hopper; bulk cement likewise was purchased from outside sources, transported by truck to the site, and placed in a hopper; and thereafter, by proper equipment, these ingredients were taken from the various hoppers, delivered to the premixing plant, mixed together and placed in transit-mix trucks.

In December 1956 the site became subject to the county zoning regulations contained in Ordinance Number 1402 (New Series) which placed it in an agricultural zone. Property within such a zone was not permitted to be used for a sand and gravel pit, a concrete premixing plant, or a rock-crushing plant unless excepted from the operation of the ordinance by principles governing existing nonconforming uses, or pursuant to a special use permit. Sections 509 and 510 of the ordinance authorized the continuance of nonconforming uses existent at the time of its application to any subject property. Section 480 thereof provided for the use of property for rock, sand and gravel borrow pits and quarries, for rock crushing plants

and for processing decomposed granite, soil, rock, sand or gravel. The Ordinance places such uses in an unclassified category, because they possess characteristics of such unique and special form as to make impracticable their being included automatically "in a designated zone"; declares that "the authority for the location and operation thereof shall be subject to review and the issuance of a special use permit"; sets up a procedure for the application, hearing and review incident to obtaining such a permit; and prescribes a standard by which the granting thereof shall be judged. At the time the zoning ordinance was extended to the property in question the sand pit and the concrete premixing plant were in operation. A year later, i.e., December, 1957, "Sierra" commenced construction of a rock-crushing plant on the site; in June, 1958 commenced operation of this plant, and since that time has continued to construct, modify the construction of and operate the same. As a result, since this latter date the rock, gravel and sand used in operating the concrete premixing plant are crushed, washed and processed on the site. Rock material processed by the crusher is obtained from a quarry about three miles distant; and sand obtained from the site is combined with sand obtained from the rock crushing process for a desired mixture.

The rock-crushing plant is larger than the concrete premixing plant; is described as consisting of a sand and gravel unit, which sizes and washes sand, gravel and crushed rock, and a rock crushing unit which crushes the rock; consists of a system of crushers, vibrating screens, washing devices, electric motors, and conveyor belts; has a replacement cost of $186,000 as compared to a replacement cost of $65,000 for the premixing plant; uses 576,000 gallons of water per day and requires 250 horsepower to operate as compared to 21,000 gallons and 30 horsepower respectively, for the premixing plant; and occupies an area about twice that occupied by the premixing plant.

The county's building ordinance required the issuance of building permits preliminary to the construction of such a concrete premixing or rock-crushing plant; however, "Sierra" did not apply for or obtain any building permit to construct the concrete premixing plant, nor a building permit or special use zoning permit for the construction and operation of a rock-crushing plant. Since construction of the latter, an application for a special use permit has been made pursuant to prescribed

regulations; the granting thereof was recommended by the planning commission, but denied by the board of supervisors.

Before 1955 an attempt was made to use the site for farming purposes but it was found to be unsuited therefor although lands similarly situated in the river bed have been used for "golf courses, dairies, riding stables, cattle grazing, etc."

The rock-crushing plant on the site is located 1,000 feet from Woodside Avenue known as State Highway 67; approximately 1,300 feet from an elementary school to the southeast; about 1,050 feet and 1,500 feet respectively from a junk yard and a rest home each of which is adjacent to Woodside Avenue. A golf course is adjacent to a portion of the northerly boundary of the property.

There are 14 concrete premixing plants in the County of San Diego similar in type to that operated by "Sierra." Of these, six operate with a rock-crushing plant on the site and eight operate without such a plant on the site. As to the latter, aggregate used in the operations is hauled varying distances, including 3, 9, 10, 18, 21 and 50 miles.

Petitioners filed a petition for an injunction and also for writs of mandate and prohibition, however, any contention on appeal respecting denial of their requests for writs of mandate and prohibition have been abandoned and the judgment is contested only insofar as it denies injunctive relief. The application for the writs was directed to the proceedings involving the request for a special use permit. The application for injunction sought to restrain respondents "from any act directly or indirectly interfering with petitioners' operation of its rock crusher as an integral part of its pre-mixed concrete business on the site." The case was heard upon an agreed statement of facts supplemented by the testimony of witnesses and the introduction of exhibits. The court found against petitioners and entered judgment accordingly from which this appeal has been taken.

The primary contention on appeal is that the zoning ordinance as applied to petitioners' property is unreasonable and invalid. Subsidiary contentions involve the nature and extent of petitioners' excepted nonconforming use; the alleged insufficiency of the findings in defining the same; the refusal of the trial court to admit evidence proving that petitioners had purchased and made plans for the erection of a rock-crushing plant prior to the date the zoning ordinance was extended to their property; the further refusal of that court to admit evidence proving the amount of damage petitioners would

sustain if required to comply with that ordinance; and the alleged invalidity of Ordinance Number 593.

■ "The constitutionality of the principle of zoning is no longer an open question, and a restrictive regulation in this field pursuant to a municipality's comprehensive and systematic plan of community development, when reasonable in object and not arbitrary in operation, will be sustained as within the legitimate exercise of the police power. (*Miller* v. *Board of Public Works*, 195 Cal. 477, 488-490 [234 P. 381, 38 A.L.R. 1479]; *Zahn* v. *Board of Public Works*, 195 Cal. 497, 503 [234 P. 388], affirmed 274 U.S. 325, 328 [47 S.Ct. 594, 71 L.Ed. 1074]; *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 337 [175 P.2d 542].) ■ Such an enactment is considered with every intendment in favor of its validity, and a court will not, except in a clear case of oppressive and arbitrary limitation, interfere with the legislative discretion which has been exercised in the adoption of the regulation. (*Jardine* v. *City of Pasadena*, 199 Cal. 64, 72 [248 P. 225, 48 A.L.R. 509].) ■ It is presumed that the measure as a whole is justified under the police power and adapted to promote the public health, safety, morals, and general welfare. (*Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990].) The courts may differ with the zoning authorities as to the 'necessity or propriety of an enactment,' but so long as it remains a 'question upon which reasonable minds might differ,' there will be no judicial interference with the municipality's determination of policy." (*Clemons* v. *City of Los Angeles*, 36 Cal.2d 95, 98 [222 P.2d 439].)

■ Authority for the enactment of a zoning ordinance being present, where the classifications adopted and the districting applied thereto, within the realm of fair debatability, are reasonably related to the planned community development, the courts will not interfere with the legislative determination in the premises. (*McCarthy* v. *City of Manhattan Beach*, 41 Cal.2d 879, 890 [264 P.2d 932]; *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 339 [175 P.2d 542]; *Sunny Slope Water Co.* v. *City of Pasadena*, 1 Cal.2d 87, 94 [33 P.2d 672]; *Zahn* v. *Board of Public Works*, 274 U.S. 325, 328 [47 S.Ct. 594, 71 L.Ed. 1074].) ■ If, broadly considered, a reasonable basis for the adopted classification and districting exists, the ordinance must be sustained. (*Jones* v. *City of Los Angeles*, 211 Cal. 304, 309 [295 P. 14]; *Acker* v. *Baldwin*, 18 Cal. 2d 341, 346 [115 P.2d 455].)

Statutory approval of the zoning classification used in the

ordinance under consideration is found in section 65800 of the Government Code which authorizes a county organized under the general laws to "regulate the use of buildings, structures, and land as between agriculture, industry, business, residence and other purposes."

Applying the foregoing principles to the case at bar, we conclude that the evidence substantially supports the implied finding of the trial court that it was not unreasonable to categorize the area of which petitioners' property was a part within an agricultural zone. However, this determination is incident to the primary issue at hand which concerns the applicability of the zoning ordinance to that particular property.

Although "the general scheme of zoning is sound and valid, nevertheless the courts may properly inquire as to whether the scheme of classification and districting has been applied fairly and impartially in each instance." (*Reynolds v. Barrett*, 12 Cal.2d 244, 251 [83 P.2d 29] ; *Miller v. Board of Public Works*, 195 Cal. 477 [234 P. 388] ; *Hurst v. City of Burlingame*, 207 Cal. 134, 143 [277 P. 308] ; *Wilkins v. City of San Bernardino*, 29 Cal.2d 332, 338 [175 P.2d 542].) The inquiry in each case is whether the zoning ordinance as applied to the subject property is arbitrary, discriminatory or unreasonable.

Under the zoning ordinance in question, in addition to a use for agricultural purposes, petitioners' property may be used for the purposes to which it was devoted on December 28, 1956, i.e., existent nonconforming uses, and for those unclassified uses described therein for which a permit has been obtained. Our inquiry, therefore, must be directed to the reasonableness of the ordinance in restricting the property to the foregoing enumerated uses. Pertinent to such an inquiry is the observation of the court in the case of *Wilkins v. City of San Bernardino*, 29 Cal.2d 332, 340 [175 P.2d 542], that "an examination of the California decisions discloses that the cases in which zoning ordinances have been held invalid and unreasonable as applied to particular property fall roughly into four categories: 1. Where the zoning ordinance attempts to exclude and prohibit existing and established uses or businesses that are not nuisances. (*Jones v. City of Los Angeles*, 211 Cal. 304 [295 P. 14] ; see *Biscay v. City of Burlingame*, 127 Cal.App. 213 [15 P.2d 784].) 2. Where the restrictions create a monopoly. (*In re White*, 195 Cal. 516 [234 P.

396] ; *Wickham* v. *Becker,* 96 Cal.App. 443 [274 P. 397] ; *Andrews* v. *City of Piedmont,* 100 Cal.App. 700 [281 P. 78].)
3. Where the use of adjacent property renders the land entirely unsuited to or unusable for the only purpose permitted by the ordinance. (*Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93].) 4. Where a small parcel is restricted and given less rights than the surrounding property, as where a lot in the center of a business or commercial district is limited to use for residential purposes, thereby creating an 'island' in the middle of a larger area devoted to other uses.''

Obviously petitioners' property does not fall within the last three of the aforementioned categories. There is no contention that the restrictions in question create a monopoly; the use of adjacent property does not render the land unsuitable for agricultural purposes; and, as will appear hereinafter, instead of being an island with less rights and subject to more restrictions than surrounding property, petitioners' land constitutes an island less restricted in use and with greater rights than such surrounding property. In substance petitioners contend that their property falls within the first category heretofore noted. A consideration of this contention necessitates a decision respecting the nature and extent of their claimed nonconforming use.

Respondents, in their reply brief, state that they ''do not contend that the maintenance and operation of the sand and gravel pit, concrete premixing plant, tailings pond area, rest rooms, shop, employee's lunch room and quonset hut are unlawful.'' Petitioners claim that this noncontention is of recent origin. However, it conforms to the decision of the trial court which found that petitioners' use of the site for the extraction of sand and the operation of the premixing plant constituted lawful nonconforming uses of the property. That court also found that there had not been any processing of sand, gravel or rock on the site prior to the installation of the rock-crushing plant, which was after the zoning ordinance had been applied to the property; that the rock-crushing plant is neither an integral nor a necessary part of the concrete premixing plant; and that the operation of such a plant does not constitute a lawful nonconforming use. From the facts found the trial court concluded, as a matter of law, that petitioners have the right to extract sand from, and operate a concrete premixing plant on the site as a nonconforming use, but that the erection of a rock-crushing plant was an unlawful expansion or extension of a nonconforming use and in violation of the zoning

ordinance. Petitioners claim that the term "rock crushing plant" is ambiguous; that the plant referred to in the statement of facts as a "rock crushing plant" in reality is two plants, i.e., a rock-crushing plant which is a comparatively small unit, and a sand and gravel processing plant, which is a much larger unit. Even though there is evidence to support this distinction, the record clearly indicates that the court and the parties proceeded on the basis that the rock-crushing unit and the sand and gravel processing unit constituted one plant described as a rock-crushing plant. The petition referred only to a rock-crushing plant; the statement of facts referred to and described in detail the rock-crushing plant and its operation, including the crushing, screening, processing and washing of sand and gravel obtained therefrom; there was no reference to a sand and gravel processing plant or unit; and, in the findings, the court found that the facts set forth in the statement of facts were true, i.e., that the rock-crushing plant included the total operation heretofore outlined. Moreover, as will later appear in this opinion, any alleged distinction between a rock-crushing plant and a sand and gravel processing plant is inconsequential in view of our conclusion that the operation conducted by either plant does not constitute a valid nonconforming use.

From January, 1956 until June, 1958, the plaintiffs used their property for the purpose of extracting sand therefrom and operating a premixing plant thereon. This operation was conducted without the crushing of rock or the processing of rock, sand and gravel obtained thereby. All of the materials incident to the operation were brought to the site ready for mixture. The same operation may be conducted at the present time under the zoning ordinance and the decision of the trial court.

The rock-crushing operation on the site did not commence until 18 months after the site became subject to the zoning ordinance. Petitioners contend, however, that since December, 1955 when the premixing plant was built, they have been engaged in the ready-mix concrete business; that the site was being used for a ready-mix concrete operation; that such an operation involves the use of a premixing plant and a rock-crushing plant; that the rock-crushing plant was in the planning stage and the equipment therefor purchased prior to the time when the zoning ordinance was extended to the site; that, at any rate, the rock-crushing operation is similar to the premixing plant operation; and, therefore, the opera-

tion of the rock-crushing plant must be included within the excepted nonconforming use.

In support of their position, petitioners cite *McCaslin* v. *City of Monterey Park*, 163 Cal.App.2d 339 [329 P.2d 522], which held that the nonconforming use of property as a granite quarry was not limited to the area already excavated at the time of the enactment of the zoning ordinance but, because of the nature of the business, might extend to the whole parcel; and *Endara* v. *City of Culver City*, 140 Cal. App.2d 33, 38 [294 P.2d 1003], which held that a nonconforming use is not restricted to an identical use in existence at the time the zoning ordinance becomes effective, but embraces "any use substantially the same or similar," and affirmed a judgment based on a finding that the disputed use was substantially the same as that before the adoption of the ordinance, where the evidence showed that the buildings located on the property under consideration were the same and the storage and manufacturing uses to which they were put were substantially the same. These cases are not factually analogous to the case at bar. Implicit in the findings before us is the fact that the use of the property for the operation of a rock crusher is not substantially similar to its use for a sand pit and premixing plant. This conclusion is supported by evidence respecting the comparative costs, extent of equipment used, area covered, water and power consumed, and the nature of the operation of the two plants. Expressly found is the fact that the operation of a rock-crushing plant on the site of a premixing plant or even the operation of a rock-crushing plant at another site, is not an integral part of a concrete ready-mix business. The evidence establishes that 8 out of 14 concrete ready-mix businesses in the locality under consideration obtain all of their materials from sources outside of their premixing plant site; do not operate a rock-crushing plant on the site, and obtain their crushed rock from other ownerships. The facts as found are supported by the evidence.

In determining whether a nonconforming use is the same before as after the application of a zoning ordinance "each case must stand on its own facts." (*Edmonds* v. *County of Los Angeles*, 40 Cal.2d 642, 651 [255 P.2d 772].)

"The ultimate purpose of zoning is to confine certain classes of buildings and uses to particular localities and to reduce all nonconforming uses within the zone to conformity as speedily as is consistent with proper safeguards for the interests of those affected. Any change in the premises which

tends to give permanency to, or expands the nonconforming use would not be consistent with this purpose." (*Dienelt* v. *County of Monterey*, 113 Cal.App.2d 128, 131 [247 P.2d 925].) The provisions of the zoning ordinance under consideration, although recognizing the right of a property owner to continue a nonconforming use existent at the time his property becomes subject to the ordinance, prohibits any expansion or extension thereof and contemplates the eventual elimination of such uses through abandonment, obsolescence or destruction. ▮▮▮ "Given the objective of zoning to eliminate nonconforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement." (*County of San Diego* v. *McClurken*, 37 Cal.2d 683, 687 [234 P.2d 972].) As a consequence, the right to use property as a trailer court accommodating 20 trailers did not include the right to extend the accommodations for an additional 30 trailers (*Edmonds* v. *County of Los Angeles*, 40 Cal.2d 642, 651 [255 P.2d 772]); the permanent installation of 4 gasoline storage tanks on property formerly used for various industrial purposes including the storage of gasoline and other substances in movable tanks, the new tanks increasing existing storage capacity five times and providing the storage for an adjoining service station, constituted an extension and an unwarranted enlargement of the existing nonconforming use (*County of San Diego* v. *McClurken*, 37 Cal.2d 683, 687 [234 P.2d 972]); the 22 foot extension into a vacant lot of a building used as a grocery store under a nonconforming use was not permissible (*Rehfeld* v. *San Francisco*, 218 Cal. 83 [21 P.2d 419]); transferring a grocery business conducted in a building on the rear of a lot in a dwelling zone under an existing nonconforming use, to a dwelling house lawfully constructed on the front of such lot did not constitute a continuation of such nonconforming use (*City of Yuba City* v. *Cherniavsky*, 117 Cal.App. 568 [4 P.2d 299]); increasing the capacity of property used to feed cattle by the construction of additional feeding pens constituted an unlawful extension of a nonconforming use (*County of Orange* v. *Goldring*, 121 Cal.App.2d 442 [263 P.2d 321]); a restaurant's acquisition of and operation under a general on-sale liquor license constituted an expansion of an existing nonconforming use consisting of its ownership and operation under an on-sale beer and wine license (*Town of Los Gatos* v. *State Board of Equalization*, 141 Cal.App.2d 344 [296 P.2d 909]); and refusal of permission to install a wet sand classifier on

230

property used as a sand pit wherein dry screening methods were in operation was upheld on appeal on the ground that the new operation would amount to an extension of nonconforming use. (*De Felice* v. *Zoning Board of Appeals of Town of East Haven,* 130 Conn. 156 [32 A.2d 635].) These decisions demonstrate the fallacy of petitioners' contentions that an owner's business determines the scope of the nonconforming use to which he may put his property and that the addition of the rock-crushing plant was a part of their existent nonconforming use to operate a sand pit and premixing plant.

Under the evidence in this case and the law applicable thereto, the determination of the trial court that the operation of the rock-crushing plant now upon petitioners' property was not a part of the nonconforming use to which that property was put at the time the zoning ordinance was extended to it must be sustained.

Petitioners propose that the application of the zoning ordinance to their property as it now exists is an unwarranted exercise of the police power tantamount to a taking of their property without just compensation, contending that a zoning ordinance is inapplicable to property which is suitable only for a single use when that use is prohibited thereby and cite *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 413 [43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321], in support of their position. The facts in the cited case are exceptional and demonstrate its inapplicability to the case at bar. (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 891 [264 P.2d 932].) Basic fallacies in petitioners' argument are that the property in question is suitable only for a single use; that the ordinance destroys the use to which the property was put at the time it was extended thereto; and that the use dependent upon the condition of the property as it exists at the present time, which resulted from petitioners' violation of the ordinance, is protected by constitutional guarantees. The restrictions placed upon petitioners' property by limiting its use to agricultural purposes and to that existing at the time the ordinance became effective, i.e., to the excavation of sand and the operation of a premixing plant, are not unreasonably oppressive or confiscatory. Except for nonconforming uses, the surrounding property is subject to the agricultural limitation. Petitioners operated a concrete ready-mix business without a rock crusher on the site at the time the property became subject to the ordinance. Other concrete ready-mix businesses in the vicinity operated under similar conditions. The addition of a rock-crushing plant brings to

this agriculturally zoned area a type of business distortive of the zoning plans and adds permanency to a nonconforming use which the intent of the ordinance seeks to eliminate. As heretofore noted, zoning the area in which petitioners' property is located as agricultural constituted a valid exercise of legislative authority. If petitioners' property had not been used as a sand pit and premixing plant site at the time it became subject to the zoning regulations, no valid complaint could be made because of its inclusion within the agricultural zone, and the ordinance as applied thereto would not have been unreasonable, arbitrary or confiscatory. As the ordinance takes cognizance of the uses to which petitioners' property was put at the time the agricultural zone was extended to that property and does not restrict the use thereof to agricultural purposes but permits the operation of a sand pit and premixing plant thereon under the nonconforming use provisions, no valid complaint can be made that the application of the ordinance to that property is unreasonable, arbitrary or confiscatory.

Petitioners particularly urge that their prospective use of the site should be considered as a part of the nonconforming use existent at the time the property became subject to the ordinance; that they had purchased the rock crusher and had made plans for its installation prior to that time; and that the court erred in refusing to admit evidence to establish these facts. Reliance is placed on the case of *Dobbins* v. *City of Los Angeles,* 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169], and *County of San Diego* v. *McClurken,* 37 Cal.2d 683 [234 P.2d 972], neither of which is controlling. In the former, a gas works was actually in the course of construction at the time of the adoption of an ordinance which halted its completion. In the latter case, i.e., *County of San Diego* v. *McClurken,* 37 Cal.2d 683, 691 [234 P.2d 972], the court made a statement which petitioners use out of context to support their position. It said:

"If an owner has legally undertaken the construction of a building before the effective date of a zoning ordinance, he may complete the building and use it for the purpose designed after the effective date of the ordinance. (Citing cases.) Protection of an undertaking involving the investment of capital, the purchase of equipment, and the employment of workers, is akin to protection of a nonconforming use existing at the time the zoning restrictions become effective."

Previously the court had referred to *Dobbins* v. *County of*

*Los Angeles, supra,* 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169], and its remarks obviously referred to the factual situation there under consideration, i.e., the construction of a plant actually commenced but not completed and put in use before enactment of the zoning ordinance. This is not the situation in the case at bar. Moreover, it is noteworthy that the court was considering an owner who "has legally undertaken the construction of a building." Petitioners herein did not legally undertake the construction of either the premixing plant or the rock crusher as they did not obtain a building permit therefor. Also of note in the cited case, is the court's reply to the contention that the land owners, prior to the effective date of the zoning ordinance, had contemplated using their property for a general purpose and had gained a vested right to complete their contemplated development in accord with that purpose, including construction of the facilities objected to which had been delayed because of a lack of funds; the court said (p. 690) :

"The purpose of the landowner in purchasing the property must yield to the public interest in the enforcement of a comprehensive zoning plan. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 337 [175 P.2d 542]; *Acker* v. *Baldwin,* 18 Cal.2d 341, 344 [115 P.2d 455]; *Sunny Slope Water Co.* v. *City of Pasadena,* 1 Cal.2d 87, 93-94 [33 P.2d 672]; *cf. Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213, 215 [93 P.2d 93].) The intention to expand the business in the future does not give defendants the right to expand a nonconforming use. (*Town of Billerica* v. *Quinn,* 320 Mass. 687 [71 N.E.2d 235, 236]; *Chayt* v. *Board of Zoning Appeals of Baltimore City,* 17 Md. 426 [9 A.2d 747, 750]; *Appeal of Kiddy, supra,* note 1.) The ordinance has made allowance for the continuance of nonconforming uses existent in 1942; it does not permit the enlargement of such uses as the owners find expansion desirable. It is immaterial that a property owner in an area zoned for residential purposes contemplated the maximum commercial utilization of his property previous to the zoning ordinance"; and held (p. 690), that the landowners were "confined in their nonconforming use to the activities carried on at the time their property was zoned."

The activity of the owner in the use of his property at the time it becomes subject to a zoning ordinance and not his plans regarding the future use of that property determines the scope of the nonconforming use excepted from the restrictions imposed by the ordinance. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 689 [234 P.2d 972]; *Sunny Slope*

*Water Co.* v. *City of Pasadena,* 1 Cal.2d 87, 91 [33 P.2d 672] ; *Wheat* v. *Barrett,* 210 Cal. 193, 197 [290 P. 1033] ; *People* v. *Johnson,* 129 Cal.App.2d 1, 10 [277 P.2d 45] ; *O'Rourke* v. *Teeters,* 63 Cal.App.2d 349, 352 [146 P.2d 983].)

 From the record before this court it appears that petitioners did not commence installation of the rock crusher until almost two years after installation of the premixing plant and a year after the zoning ordinance became effective. Use of the cite for a rock-crushing plant was a new activity.

 Petitioners urge, however, that the court should enjoin enforcement of the ordinance because of the severe hardship which would be imposed upon them by its enforcement, and complain of alleged error by the trial court in excluding evidence of such hardship. ██ It has been reiterated on many occasions that ''every exercise of the police power is apt to affect adversely the property interest of somebody'' (*Zahn* v. *Board of Public Works,* 195 Cal. 497, 512 [234 P. 388]), and the fact that some hardship or financial injury to a property owner may result from zoning restrictions does not invalidate the imposing ordinance. (*Livingston Rock etc. Co.* v. *County of Los Angeles,* 43 Cal.2d 121, 127 [272 P.2d 4] ; *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 890 [264 P.2d 932] ; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 338 [175 P.2d 542].) The case at bar is not analogous to the cases of *Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14], or *Endara* v. *City of Culver City,* 140 Cal. App.2d 33 [294 P.2d 1003], which consider the issue of hardship resulting from the elimination of a nonconforming use existent at the time the zoning ordinance was adopted.

 From January, 1956 until June, 1958, petitioners operated their premixing plant by using materials obtained from sources outside the site. They may continue to do so at the present time. This operation is similar to that of many other concrete ready-mix businesses in the vicinity. Any hardship attributable to restrictions which prohibit the expansion of their nonconforming use by the addition of a rock-crushing plant is a hardship incidental to a lawful exercise of the police power. Any hardship resulting from the expense involved in constructing the rock crusher or in its removal must be attributed to petitioners' violation of the law in proceeding with their construction in defiance of the ordinance and without a building permit. Protection against such hardship is without the purposes of the law. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 342 [175 P.2d 542] ; *Acker* v. *Baldwin,* 18 Cal.

2d 341, 346 [115 P.2d 455].) The nonconforming use protected by constitutional guarantees is limited to that use as it existed at the time of the adoption of the zoning ordinance. (*Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 342 [175 P.2d 542].)

In opposition to petitioners' contention that their nonconforming use of the site included its contemplated use, respondents argued that the use of the site for a rock-crushing plant was prohibited by Ordinance Number 593 even before the zoning ordinance became effective and, therefore, was not properly within their contemplation; whereupon, petitioners countered with the claim that Ordinance Number 593 also was invalid. Although we are of the opinion that Ordinance Number 593 was a proper exercise of the police power and validly applied to the property in question (*Livingston Rock etc. Co.* v. *County of Los Angeles*, 43 Cal.2d 121 [272 P.2d 4]; *Gospel Army* v. *City of Los Angeles*, 27 Cal.2d 232 [163 P.2d 704]; *Carter* v. *Stevens*, 211 Cal. 281 [295 P. 28]; *Parker* v. *Colburn*, 196 Cal. 169 [236 P. 921]; *In re Holmes*, 187 Cal. 640, 646 [203 P. 398]; *Gaylord* v. *City of Pasadena*, 175 Cal. 433 [166 P. 348]; *Odd Fellows Cemetery Assn.* v. *City & County of San Francisco*, 140 Cal. 226 [73 P. 987]; *Laurel Hill Cemetery* v. *City & County of San Francisco*, 152 Cal. 464 [93 P. 70, 14 Ann.Cas. 1080, 27 L.R.A. N.S. 260]; *Ex parte Shrader*, 33 Cal. 279; *People* v. *Johnson*, 129 Cal.App.2d 1, 7 [277 P.2d 45]; *In re Angelus*, 65 Cal.App.2d 441 [150 P.2d 908]; *South Pasadena* v. *San Gabriel*, 134 Cal.App. 403 [25 P.2d 516]), it is not necessary to explore this issue to the full extent argued by petitioners in the light of our previously expressed views respecting the extent of their nonconforming use.

Petitioners advance a unique argument based on their contention that Ordinance Number 593 is invalid which is answered adversely by an analysis thereof without determining the effect of that ordinance. They claim that this ordinance, and subsequent amendments thereto, have preempted the field of legislation in the matter of the regulation of rock-crushing plants and, for this reason, the provisions of the zoning ordinance with respect to this subject matter are invalid; that because of constitutional limitations, ambiguity and other reasons Ordinance Number 593 also is invalid; and that, as a consequence, there is no existing valid ordinance which prohibits their use of the site for a rock-crushing plant. They are suggesting that an invalid ordinance may be valid for the purpose of preempting a field of legislation in order to invali-

date a subsequent ordinance in the same field. The mere statement of the argument reveals its obvious absurdity.

The findings of fact and conclusions of law made by the trial court are supported by the evidence and the law in the premises. No error was made in the rejection of testimony offered.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 14, 1960.