[Civ. No. 6717.   Fourth Dist.   July 28, 1961.]

PARAMOUNT ROCK COMPANY, INC. (a Corporation) et al., Respondents, v. COUNTY OF SAN DIEGO et al., Appellants.

410

Henry A. Dietz, County Counsel, David B. Walker and James E. Miller, Deputies, for Appellants.

Kaminar, Sorbo, Andreen, Thorn & Gallagher, Robert Thorn, Robert E. Andreen and Joseph T. Enright for Respondents.

SHEPARD, Acting P. J.—This is an appeal by the county of San Diego, hereinafter called "County," its Board of Supervisors, hereinafter called "Board," and its Planning Commission, hereinafter called "Commission," from a judgment granting a peremptory writ of mandate directing Commission to issue a special use permit to Paramount Rock Company, Inc., a corporation, and Sierra Sand Company, a corporation, hereinafter called "Companies."

## FACTS

Certain preliminary phases of this case have already been considered by this court in *Paramount Rock Co.* v. *County of San Diego,* 180 Cal.App.2d 217 [4 Cal.Rptr. 317], and reference is hereby made to that case for details of the background. Briefly, the facts necessary for decision in the case here at bar are substantially as follows: Companies are interested in the operation of the business presently engaged in crushing and processing rock, and in extracting sand, decomposed granite, gravel and soil, and the operation of a concrete-mixing plant, on a tract of 76 acres of land in an unincorporated area of County, which is so zoned by the County zoning ordinance that Companies may not operate said business unless a prior nonconforming use exists or a special use permit is obtained in accordance with the provisions of said zoning ordinance.

In 1958 a dispute arose between the parties hereto relating to the proper applicability of the zoning ordinance to Companies' operations and whether or not Companies must have a special use permit as a prerequisite to the operation of said business. In September 1958, Companies filed with Commission an application for "a special use permit for a rock crushing plant, processing of decomposed granite, soil, rock, sand, or gravel, . . ." Commission, on October 16, 1958, filed its order granting such special use permit for a period of 10 years on condition (*inter alia*) that:

"(a) The rock crushing plant and processing of decomposed granite, soil, rock, sand or gravel be located with the Plant Site as shown on Sheet 2 of the Plot Plan, and not closer to any boundary of that site than is shown thereon."

An appeal from such order was filed with Board by a third party on October 20, 1958. On November 18, 1958, Board heard the appeal. A quorum of three members of Board was present. Two members of Board were not present. After a full hearing, Board ordered that the special use permit for the rock crusher and the processing of rock be denied, and that all other portions of the application be granted; and on December 9, 1958, Board adopted its findings with reference thereto.

In the meantime, on October 31, 1958, Companies filed in the Superior Court in San Diego County, action Number 229425, praying for writs of mandate, prohibition and injunction, seeking the issuance of the permit by the Commission and to prevent County or its agents from interfering with the operation

of the rock crusher. That action proceeded to trial February 17, 1959, and the trial court therein found that the extraction of sand and the operation of the concrete-mixing plant constituted a prior nonconforming use for which no special use permit was required, but that the operation of the rock-crushing plant did not constitute a prior nonconforming use. The court concluded and adjudged that the operation of the rock-crushing plant was in violation of the County zoning ordinance, and rendered judgment in favor of County and its officers, denying the writs prayed for. Companies appealed to this court from that judgment, and this court, on April 21, 1960, affirmed the judgment. (*Paramount Rock Co.* v. *County of San Diego, supra.*)

### PRESENT ACTIONS

August 29, 1960, Companies commenced the present action, being Superior Court Number 246866, for writs of prohibition, mandate and injunction, seeking to prevent County and its officers from interfering with Companies' rock-crushing plant operation, to prevent Board from proceeding further with the appeal from Commission's order granting special use permit, and to compel the issuance by Commission of said special use permit as originally granted by Commission. August 30, 1960, County also commenced an action against Companies, seeking injunctive relief against said rock-crushing operation. Said action is Number 246921. Both actions were consolidated for trial. Apparently both parties were satisfied that the issues between the parties were sufficiently presented by the pleadings in action 246866, since 246921 is given no further mention in any part of the pleadings, findings or the record before us. Apparently both parties were satisfied to present the matter to the trial court on the basis of the denials of the answer being taken as true, and the affirmative allegations of special defense being taken as untrue, since no evidence was presented by either side at the trial except one stipulation relating solely to the method of voting by Board. On that basis, the trial court rendered judgment for Companies, granting a peremptory writ of mandate for the issuance by Commission to Companies of the special use permit from which the appeal to Board had been taken. The remaining issues relating to injunction were apparently continued, awaiting finality of this judgment granting peremptory writ of mandate for issuance of special use permit. From that judgment, this appeal is taken.

### THE PROBLEM

The primary issue presented is whether or not the action of Board in denying the special use permit for the rock crusher was valid. All other questions are subsidiary to that question. In other words, was a majority vote sufficient for the action taken by Board, or was a four-fifths vote of all its members required.

While the pleadings originally raised the question of the validity of the appeal to Board from Commission's order, that question was decided in action 229425, affirmed by this court in *Paramount Rock Co.* v. *County of San Diego, supra,* and is not here presented. No question is raised respecting the hearing of November 18, 1960, having been held within the 40 days mentioned in section 707.6 of the ordinance. (See note 1 below for ordinance sections involved.) Nor is there any question raised respecting the date of the adoption of the findings (December 9, 1958) having been within the 40 days mentioned

---

[1] "Section 707.5. TRANSMISSION OF COMMISSION'S RECORD TO BOARD OF SUPERVISORS. Upon filing of the written appeal to the Board of Supervisors as provided herein, the Director of Planning shall forthwith transmit to the Clerk of the Board of Supervisors for the use of said Board, the Planning Commission's record in the matter."

"Section 707.6. BOARD OF SUPERVISORS TO HOLD PUBLIC HEARING ON APPEAL. Within forty (40) days following the filing of the written appeal as provided in this Article the Board of Supervisors shall hold a public hearing on the matter, written notice of which shall be given as prescribed in subdivision (2) of Section 806 of this ordinance, and to the Planning Commission. The hearing before the Board of Supervisors shall be a hearing de novo and all interested persons may appear and present evidence."

"Section 707.7. DECISION OF BOARD OF SUPERVISORS SHALL BE FINAL. Not more than forty (40) days following its hearing on an appeal from a decision of the Planning Commission, the Board of Supervisors shall:

"(1) Grant or deny the variance or grant the variance subject to specified conditions.

"(2) Adopt findings which specify all facts relied upon by the Board of Supervisors in reaching its decision, set forth wherein these facts fulfill or fail to fulfill the requirements of Section 708 of this ordinance, and state the reasons for any conditions imposed by the Board; provided, however, that where the findings of the Board of Supervisors are in accordance with those of the Planning Commission, the Board may adopt the findings of the Planning Commission as the findings of the Board.

"The Board of Supervisors shall not grant a variance which has been denied by the Planning Commission or grant a variance greater than that granted by the Planning Commission or eliminate or modify any condition imposed by the Planning Commission except upon order of the Board of Supervisors passed by not less than four-fifths vote of all members thereof.

"The decision of the Board of Supervisors shall be final and conclusive on such appeal."

in section 707.7. Thus, the real question continues to revolve around the validity of the action of the Board on November 18, 1958, by which it denied the special use permit for rock crusher and rock processing, and whether or not the action of December 9, 1958, in adopting the findings, was valid or invalid.

THE ORDINANCE

The various sections of the ordinance involved are quoted at length in note 1, on page 410. But the particular portion which is most cogent to the argument between the parties is that part of section 707.7, which reads as follows:

"The Board of Supervisors shall not *grant* a variance which has been denied by the Planning Commission or grant a variance *greater* than that granted by the Planning Commission or eliminate or modify any *condition* imposed by the Planning Commission except upon order of the Board of Supervisors passed by not less than four-fifths vote of all members thereof. (Emphasis added.)

"The decision of the Board of Supervisors shall be final and conclusive on such appeal."

Another section of the ordinance provides that the procedure for obtaining a special use permit is governed by the procedure governing variances. No question is raised with regard to the applicability of the sections involved to special use permits.

It will readily be seen that the general sense of the above quoted portion of said section 707.7 is to compel a four-fifths vote *only* when Board's order has the effect of giving greater latitude to applicants' special use permit than was ordered by Commission. The denial of a special use permit by Board does *not* require a four-fifths vote. The wording authorizing denial of the permit by a majority vote is plain and unambiguous and needs no interpretation.

Companies' argument narrows down, then, to the effect and interpretation of the word *"modify"* as it relates to *conditions*. Companies contend that the deletion of "rock crushing plant" from the "conditions" required a four-fifths vote, because it was a "modification" of the "conditions," and that therefore the whole order was void. We doubt the validity of Companies' contended application of the word "modify" as it is used in the section. The restrictive clause above quoted is all in one sentence. The beginning of the sentence clearly shows that the intent of the drafter was to prevent Board from being

more lenient in the granting of a variance or special use permit than allowed by Commission unless a four-fifths vote of Board is secured. The obvious purpose is to provide an additional check to aid in keeping the zoning restrictions in as uniform operation as reasonable necessities will permit. The next portion of the sentence again refers to the elimination of a condition. A condition in the sense here used is normally restrictive in character. Again, the intent is shown to place a checkrein on giving greater latitude to the permittee than was granted by Commission. Thus, under the doctrine of *ejusdem generis*, it seems probable that the word ''modify'' was used in the same sense.

However, for the purposes of the matter here at bar, it is unnecessary to so hold. It is clearly held in action 229425 that the rock crushing together with the rock processing was a separable portion of the entire operation, and that such rock crushing and rock processing plant was not a valid prior nonconforming use. The allegations of Companies' petition herein, indicating possible inseparability, were denied by the answer. No evidence was offered to support the complaint. The denial must be accepted as true. (Code Civ. Proc., § 1869; *Sullivan* v. *Kantel*, 124 Cal.App.2d 723, 725 [1-2] [269 P.2d 175].) The fundamental issue was joined on this question between the identical parties to the present action in said former action 229425, and the court clearly found as a necessary basis for its judgment the fact of such separability. (*Paramount Rock Co.* v. *County of San Diego, supra,* pp. 226 [8b], 230 [8c].) The record in the case here at bar presents nothing whatever to the contrary.

There has been some change in the personnel of members of Commission and Board. However, neither action named anyone as a natural person. All members were named in their official capacity. We therefore deem such change as being unimportant on the question of res judicata. It appears therefore that the question of the separability of a special use permit as respects the rock crusher and rock-processing plant was fully and finally decided in the former case. (*Norris* v. *San Mateo County Title Co.,* 37 Cal.2d 269, 272 [1] [231 P.2d 493]; *McGaffey* v. *Sudowitz,* 189 Cal.App.2d 215, 217 [1] [10 Cal.Rptr. 862].)

What has happened here, then, is simply that Board has denied a separable portion of the special use permit. This was done by a perfectly valid majority vote. The special use

permit for the rock crusher and rock processing having been validly denied, the mention of rock crushing plant and rock processing in paragraph (a) of the conditions became surplusage. Leaving the term ''rock crushing plant'' in said paragraph (a) of the conditions could in nowise have the effect of giving Companies the right to operate such plant. It could have no effect whatever except to confuse a casual reader who would wonder why it was in there at all, for it had no meaning and would be connected with nothing. The order of Board eliminating the term ''rock crushing plant'' and the term ''rock'' from paragraph (a) of the conditions had no effect whatever except to cause the condition to read intelligibly. To say that the deletion of such a superfluity amounted to a ''modification'' invalidating the whole action of Board is too much of an absurdity to discuss further. The action of Board was clearly valid by the plain and unmistakable wording of the ordinance.

## VOTE ON FINDINGS

By the ordinance, Board was required, after it made its decision to adopt, within 40 days, findings thereon. Nothing in the ordinance requires notice to any party as a prerequisite to the adoption of findings after Board's order on the appeal. This it did on December 9, 1958. No contention is made that the findings, by their wording, are insufficient. The contention is made, however, that five members of Board voted to adopt the findings necessary to complete the action of November 18, 1958, and that two of the members so voting were not present at the hearing of November 18. Companies argue that because such two members had not heard the evidence of November 18, they were disqualified from joining in the adoption of the findings. In view of what took place, the question of the disqualification of two members of Board because they had not been at the November 18 meeting is immaterial. The vote of all five members was unanimous. This means that three members, constituting a majority of Board who were present at the hearing of November 18, did, by their unanimous vote, adopt the findings within the time and in the manner provided by the ordinance section referred to. Such action was sufficient. The votes of the two members who were absent on November 18 may be simply ignored as surplusage. The fact that they voted neither adds to or detracts from the validity of the findings so adopted. (*Nider* v. *City Commission of City of Fresno,* 36 Cal.App.2d 14, 25 [10] [97 P.2d 293] ; *Thomp-*

*son* v. *City of Long Beach,* 41 Cal.2d 235, 243 [9] [259 P.2d 649].) A majority vote was sufficient.

None of the cases cited by Companies in support of their contentions as above outlined, are of any assistance on the question. *Hopkins* v. *MacCulloch,* 35 Cal.App.2d 442 [95 P.2d 950], was one in which the ordinance involved required the unanimous vote of the entire members of the city council. The council adopted its action by less than the entire membership, and the action was held invalid. In *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66 [187 P.2d 686], the ordinance made no provision for the board to grant a permit, and the board acted in excess of its jurisdiction. In *Bandini Estate Co.* v. *County of Los Angeles,* 28 Cal.App.2d 224 [82 P.2d 185], the board of supervisors, acting as a board of equalization, attempted to split into five different hearings with one member holding each hearing. Obviously they had no quorum on each separate hearing, and it was so held. *Saks & Co.* v. *City of Beverly Hills,* 107 Cal.App.2d 260 [237 P.2d 32], involved attempted action by a council in which a majority were disqualified. Obviously there was no quorum, and their action was in excess of jurisdiction.

What we have already said makes unnecessary any discussion of the other points raised by appellants.

The judgment is reversed.

Coughlin, J., concurred.

A petition for a rehearing was denied August 24, 1961.