766 F.2d 1319
 2 Fed.R.Serv.3d 407
 The PEOPLE OF the STATE OF CALIFORNIA ex rel., John VAN DE
KAMP, Attorney General of the State of California, Plaintiff,
v.
The TAHOE REGIONAL PLANNING AGENCY, etc., Defendant/Appellee,
Tahoe Shorezone Representation, etc., Intervenor/Appellant.
 No. 84-2450.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 15, 1985.
Decided July 22, 1985.
 
 John K. Van de Kamp, Atty. Gen., N. Gregory Taylor, Asst. Atty. Gen., Richard M. Skinner, Deputy Atty. Gen., Sacramento, Cal., E. Clement Shute, Shute, Mihaly & Weinberger, San Francisco, Cal., for defendant-appellee.
 William T. Chidlaw, Law Offices of William T. Chidlaw, Sacramento, Cal., for intervenor-appellant.
 Appeal from the United States District Court for the Eastern District of California.
 Before ANDERSON and CANBY, Circuit Judges and NIELSEN,* District Judge.
 CANBY, Circuit Judge:
 
 
 1
 This appeal is one of three that arise from the same litigation. Opinions in all three appeals are being filed simultaneously. For the procedural history and the facts of the underlying litigation, the reader is referred to the opinion of Judge Nielsen in No. 84-2355, 766 F.2d 1308 (9th Cir.1985). We set forth here only the background necessary to an understanding of this appeal, brought by an intervenor in this case.
 
 
 2
 Tahoe Shorezone Representation (TSR), which represents lakefront property owners at Lake Tahoe, intervened in the litigation against Tahoe Regional Planning Agency (TRPA). TSR alleged in its Complaint in Intervention that the injunction against TRPA would prevent repair and rehabilitation of existing water-related structures, and construction of erosion control devices, on the Tahoe shoreline. It further alleged that these projects are necessary to protect lakefront property from permanent erosion damage, and to prevent the deterioration and destruction of the shoreline structures. TSR therefore sought the inclusion in any injunction of provisions that would permit repairs to existing shorezone structures, and repair and construction of shoreline protective devices.
 
 
 3
 The preliminary injunction granted by the district court permits repair and construction in the shorezone to a limited extent, but not to the extent requested by TSR. Furthermore, the district court made the issuance of construction permits conditional on property improvements which may or may not be related to the permitted repairs. TSR now asks us to modify or vacate the preliminary injunction "insofar as it restricts the right of lakefront property owners to protect their property by repairing existing water-related structures or constructing shoreline protective devices." We decline to modify the challenged portions of the injunction.
 
 
 4
 I. TSR's Opportunity to be Heard on the Preliminary Injunction
 
 
 5
 TSR initially claims that the district court abused its discretion by issuing the preliminary injunction without affording TSR an opportunity to be heard. Under the circumstances of this case, the district court did not err in proceeding as it did. Rule 65 of the Federal Rules of Civil Procedure provides that the court may not issue a preliminary injunction without notice and an opportunity to be heard for an adverse party. TSR, however, was not a party to this action on June 11, when the court heard arguments on the preliminary injunction and decided to grant it. Although TSR had filed a motion to intervene, the court denied TSR's request for an expedited hearing on the motion. TSR does not claim that the court abused its discretion when it refused to expedite the motion. If the trial court subsequently excluded TSR from the process of drafting an order to implement the injunction, it acted within its discretion in doing so.
 
 
 6
 Moreover, TSR had an opportunity to present its objections to the district court. In denying the request to expedite the motion to intervene, the court made clear that it retained jurisdiction to modify any order "issued prior to the time that a ruling is made on the motion to intervene." TSR, however, chose not to pursue relief in the district court through a motion to modify the injunction until after it had appealed from the formal order setting the terms of the injunction. The district court correctly held that TSR's notice of appeal deprived the district court of jurisdiction to grant the requested modifications. McClatchy Newspapers v. Central Valley Typographical Union No. 46, International Typographical Union, 686 F.2d 731, 734-35 (9th Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). Having chosen to appeal, TSR cannot now complain that the district court denied it a full opportunity to be heard.
 
 
 7
 II. The Propriety of the Injunction as Applied to TSR
 
 
 8
 The preliminary injunction, with certain exceptions, prohibits TRPA "from taking any action to approve any project, as defined in the Tahoe Regional Planning Compact ..., or to approve the construction of any man-made development within the agency's jurisdiction..." until TRPA adopts a plan in compliance with the Compact. TSR initially argues that the injunction should not apply to repairs to water-related structures because those repairs are not "projects" as the Compact defines that term. A "project" is "an activity undertaken by any person ... if the activity may substantially affect the land, water, air, space or any other natural resources of the region." Article II(h). TSR cites "common sense" for the proposition that shorezone repairs prevent debris from littering the lake, and contends that the plaintiffs presented no contrary evidence showing substantial adverse effects from such repairs.
 
 
 9
 TSR's argument misses the mark. The Compact requires TRPA review and approval of all "projects" in the Lake Tahoe Basin. Article VI(b). As part of this review authority, the agency is empowered to determine what is a "project" subject to its review and approval. Article VI(a).[1] TRPA has decided that repairs to water-related structures are "projects" within the meaning of the Compact. Under the TRPA Shorezone Ordinance, adopted by the agency in 1976, a permit is required for all new construction of water-related structures; for structural repairs of "non-conforming" structures; and for any other repairs of conforming or non-conforming structures if the cost of repairs exceeds $500 in a one year period. Tahoe Regional Planning Agency Ordinance No. 76-3, Section 4.11. TSR's argument that repairs are not "projects", if accepted, would lead to the conclusion that TRPA had no power to enact the Shorezone Ordinance. But the validity of the Shorezone Ordinance is not at issue in this litigation, and TSR is not entitled to insist that the court enjoin TRPA from enforcing it.[2]
 
 
 10
 Once it is accepted that repairs of shorezone structures are "projects" and therefore subject to regulation, the further question arises whether the district court properly issued an injunction preventing some repairs and conditioning permission to perform others on specified property improvements. TSR argues that the plaintiffs failed to show that irreparable harm to the environment of Lake Tahoe would result from small-scale shorezone repair and construction. It also argues that the burden on property owners who may be unable to protect their property from wind and water damage outweighs the benefit of the restrictions on their activity.
 
 
 11
 Although the preliminary injunction may place a heavy burden on the members of TSR, the district court did not abuse its discretion by including their activities within the scope of the injunction. The district court found that the plaintiffs probably would succeed on the merits of their claim that the procedures for project approval set forth in the proposed Regional Plan violate the Compact. Through the review and approval process, TRPA enforces the Compact's substantive requirement that development at Lake Tahoe shall not exceed the "environmental threshold carrying capacity" of the region. If the approval process fails to ensure that the environmental thresholds are observed, the environmental deterioration at which the Compact is directed will continue. The district court therefore properly enjoined the permit process itself, pending a final decision on the merits of the claim that the permit approval procedures do not protect the environment at Lake Tahoe.
 
 
 12
 The public interest strongly supports the preliminary injunction. The district court has greater power to fashion equitable relief in defense of the public interest than it has when only private interests are involved. Virginian Railway Co. v. System Federation No. 40, Railway Employees Department of the American Federation of Labor, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937). It may define the public interest by reference to the policies expressed in legislation. Id. at 551-52, 57 S.Ct. at 601-602. Here the Compact, which has been adopted as law by the California and Nevada legislatures and by Congress, expresses a legislative judgment that development and urbanization of the Lake Tahoe region pose a threat to the "irreplaceable" environmental and ecological values of the region. Article I (Findings and Declarations of Policy).[3] The Compact establishes "a public interest in protecting, preserving, and enhancing these values for the residents of the region and for visitors to the region." Article I(a)(7). To protect the public interest, the legislators created TRPA and gave it broad regulatory powers. The injunction prevents TRPA from asserting its powers in a manner that may be inconsistent with the legislative mandate for environmental protection.
 
 
 13
 The district court attempted to mitigate the harsh effect of the injunction by creating exceptions which allow limited repairs and construction in the shorezone. TSR, however, argues that the exceptions are unreasonably narrow. In the proceedings below, TSR asked the court to allow repairs to all existing shorezone structures, whether or not they constitute non-conforming uses under the Shorezone Ordinance, to the extent now permitted by the Ordinance.[4] It also asked for a provision allowing repair, reconstruction, and construction of shoreline protective devices to the extent allowed by the existing Ordinance. The district court rejected these proposals. Its Order prohibits structural repairs to "existing, non-conforming water-related structures" except to the extent that the repairs make the structure conforming. It also prevents new construction of any jetty or breakwater.[5] Finally, it conditions approval of any shorezone repairs or construction "on the applicant's agreement to install all water quality measures appropriate for the (entire) property, as set forth in the Lake Tahoe Basin Water Quality Plan, Handbook of Best Management Practices."
 
 
 14
 In attempting to balance the need to halt potentially destructive development against the legitimate interests of affected property owners, the district court necessarily has broad discretion. We find that the "best management practices" requirement imposes a reasonable limit on TRPA's ability to issue permits under its existing procedures. The proposed TRPA Regional Plan will require the installation of best management practices on all shorezone property. New homes already must comply with that requirement. TRPA itself has found that the implementation of best management practices will contribute to meeting the water quality goals for Lake Tahoe. TRPA Goals and Policies, Water Quality Element, at II-37, 38. Although TSR asserts that the cost of installing best management practices will make necessary repairs economically unfeasible, it has not provided enough evidence to require a conclusion that the district court abused its discretion. We note that the district court retains jurisdiction to modify this requirement, or any other provision of the injunction, if it finds reason to do so in the future.
 
 
 15
 We also find that the limitations on repairs to non-conforming water-related structures are within the district court's discretion. Even if the injunction were vacated entirely, the existing Shorezone Ordinance would limit the property owners' ability to repair non-conforming structures. See note 4 supra. The law permits such restrictions as a means of gradually eliminating non-conforming uses. Paramount Rock Co. v. County of San Diego, 180 Cal.App.2d 217, 4 Cal.Rptr. 317, 324 (1960) (collecting cases). The district court reasonably incorporated similar but stricter restrictions into the injunction, to promote the goals of the Compact during the interim period before a final Regional Plan takes effect.
 
 III. Security for the Injunction
 
 16
 TSR argues that the district court erroneously failed to require either of the plaintiffs to post a bond as security for damages that the lakefront property owners might suffer as a result of a wrongful injunction. Rule 65(c) of the Federal Rules of Civil Procedure generally requires an applicant for a preliminary injunction to post security "in such sum as the court deems proper."
 
 
 17
 The district court did not err in refusing to apply the bond requirement to the State of California. The Compact provides:
 
 
 18
 The security required for the issuance of a temporary restraining order or preliminary injunction based upon an alleged violation of this compact or any ordinance, plan, rule or regulation adopted pursuant thereto is governed by the rule or statute applicable to the court in which the action is brought, unless the action is brought by a public agency or political subdivision to enforce its own rules, regulations and ordinances in which case no security shall be required.
 
 
 19
 Article VI(j)(7) (emphasis added). The Attorney General of the State of California, acting on behalf of the people of California, is necessarily a "public agency" within the meaning of the Compact. He has sued to enforce the Compact itself. Since the Compact has been enacted as the law of California, Cal.Gov.Code Secs. 66800 et seq., the action fits within the statutory exception to the general injunction bond requirement.
 
 
 20
 The district court also properly exercised its discretion to allow the League to Save Lake Tahoe to proceed without posting a bond. The court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review. See Natural Resources Defense Council v. Morton, 337 F.Supp. 167 (D.C.D.C.1971); cf. Friends of the Earth v. Brinegar, 518 F.2d 322, 323 (9th Cir.1975) (injunction pending appeal). The League, a non-profit environmental group, indicates that it is unable to post a substantial bond. Moreover, special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute. See Friends of the Earth, 518 F.2d at 323; (National Environmental Policy Act); Natural Resources Defense Council, 337 F.Supp. at 168-69 (same). The Tahoe Compact specifically provides for private enforcement. Article VI(j)(3). Finally, the likelihood of success on the merits, as found by the district court, tips in favor of a minimal bond or no bond at all. Friends of the Earth, 518 F.2d at 323.
 
 
 
 *
 The Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Article VI(a) directs TRPA to promulgate regulations governing several enumerated activities (including, inter alia, "piers, harbors, breakwaters, channels and other shoreline developments"). It then says: "The agency shall prescribe by ordinance those activities which it has determined will not have substantial effect on the land, water, air, space or any other natural resources in the region and therefore will be exempt from its review and approval."
 
 
 [2]
 One of the provisions that TSR asked the trial court to include in the injunction would have allowed lakefront landowners to repair existing structures "which are in danger, now or during the fall and winter storms, of destruction or substantial damage ...," apparently without regard to whether the existing Ordinance would permit such repairs. Obviously such "relief" would go far beyond restoration of the landowners' pre-injunction rights
 By the same token, however, the injunction should not be construed to apply to "man-made developments" that are not "projects." The courts have no authority to broaden the permitting power of the agency in this litigation, any more than they have authority to narrow that power.
 
 
 [3]
 The legislatures found, inter alia, that:
 (1) The waters of Lake Tahoe and other resources of the region are threatened with deterioration or degeneration, which endangers the natural beauty and economic productivity of the region.
 * * *
 (3) The region exhibits unique environmental and ecological values which are irreplaceable.
 (4) By virtue of the special conditions and circumstances of the region's natural ecology, developmental patterns, population distribution and human needs, the region is experiencing problems of resource use and deficiencies of environmental control.
 (5) Increasing urbanization is threatening the ecological values of the region and threatening the public opportunities for use of the public lands.
 * * *
 (7) There is a public interest in protecting, preserving and enhancing these values for the residents of the region and for visitors to the region.
 * * *
 (10) In order to preserve the scenic beauty and outdoor recreational opportunities of the region, there is a need to insure an equilibrium between the region's natural endowment and its manmade environment.
 Tahoe Regional Planning Compact, Article I.
 
 
 [4]
 Under the Ordinance, certain existing structures described as "nonconforming" must be made to conform with the requirements of the Ordinance or removed before December 31, 1999. Section 17.00. Some such structures may not be repaired, under the Ordinance, if they are damaged or destroyed in excess of 50% of their replacement cost. Section 17.10(2)
 
 
 [5]
 TSR does not directly challenge this provision. Since there is no evidence that these specific kinds of structures are necessary to protect lakefront property, we have no reason to except them from the general prohibition against permits for new "projects."