Billy Ray RILEY, et al., Plaintiffs,

v.

The NEVADA SUPREME COURT, et al., Defendants.*

No. CV–N–90–451–ECR.

United States District Court,
D. Nevada.

Feb. 8, 1991.

to reach an agreement with respect to the receiving water standard for dissolved oxygen.

* EDITOR'S NOTE: Caption changed to:

James WEAVER, individually and on behalf of all individuals who are or will be directly subjected to Rule 250 of the Nevada Supreme Court Rules, Plaintiffs, v. The Nevada Supreme Court; Cliff Young, in his capacity as Chief Justice of the Nevada Supreme Court; John Mowbray; Robert Rose; Charles E. Springer, and Thomas L. Steffen, in their capacity as Justices of the Nevada Supreme Court, Defendants.

See page 462.

Clark County Public Defenders Office by Stephen J. Dahl, Las Vegas, Nev., and Nevada State Public Defender by Terri Steik Roeser, Deputy, Carson City, Nev., for plaintiffs.

Office of the Atty. Gen. by Kevin Higgins, Deputy Atty. Gen., Hero's Memorial Building, Capitol Complex, Carson City, NV 89710.

## ORDER & PRELIMINARY INJUNCTION

EDWARD C. REED, Jr., Chief Judge.

### I. INTRODUCTION

On February 20, 1990, the Nevada Supreme Court added to its Supreme Court Rules, "PART V. RULES GOVERNING PRACTICE IN CERTAIN ACTIONS IN THE DISTRICT COURTS." Part V, Rule 250 addresses procedure in capital cases. The Nevada Supreme Court added this new section to help remedy the many problems, delays and inefficiencies involved in the guilt, sentencing, and post-conviction phases of capital cases. With all due respect, we are compelled preliminarily to enjoin enforcement of Rule 250(IV)(H).

Rule 250 took effect on June 1, 1990, and establishes various procedures in all capital cases commenced on or after June 1, 1990. Plaintiff Billy Ray Riley, sentenced to death, faces part of Rule 250 on his appeal to the Nevada Supreme Court.

On September 12, 1990, plaintiffs Libby, sentenced to death, and many others represented by the Nevada State Public Defender's Office, filed a Complaint For Preliminary and Permanent Injunction and Declaratory Relief under 42 U.S.C. § 1983 and an Application for Temporary Restraining Order in this court (*Libby, et al. v. The Nevada Supreme Court, et al.*, Case No. CV–N–90–445–ECR, Docket # 1).

On September 18, 1990, plaintiffs Riley and many others represented by the Clark County Public Defender's Office, filed an Application For Temporary Restraining Order and Complaint For Preliminary and Permanent Injunction under 42 U.S.C. § 1983 with the United States District Court in Las Vegas, Nevada (*Riley, et al.*

*v. Nevada Supreme Court, et al.*, Case No. CV–N–90–451–ECR, Docket # 1).

Plaintiffs' complaints allege that various sections of Rule 250 are unconstitutional. Further, plaintiffs assert that the Nevada Supreme Court has acted unconstitutionally in some of the actions it has taken pursuant to Rule 250. Plaintiffs ask this court to enjoin the Nevada Supreme Court from continuing certain practices and procedures under the allegedly unconstitutional provisions of Rule 250.

On September 18, 1990, defendants submitted their Opposition to plaintiff Riley's Motion for Preliminary and Permanent Injunction. We consolidated the cases pursuant to the parties' Stipulation to Consolidate Causes of Action for all further proceedings, designating *Riley* as the base file. On December 18, 1990, we heard oral argument on the motion, and now determine whether a preliminary injunction shall issue.

## II. PLAINTIFFS' ALLEGATIONS AND DEFENDANTS' RESPONSES

Plaintiffs allege that their constitutional rights to effective assistance of counsel, equal protection, and due process, have or will be violated by Rule 250, Sections (IV)(E), (F) and (H), and Sections (III)(A)(3) and (4). The text of these sections is set out below, under the substantive analyses of them.

Plaintiffs argue that the mandatory time constraints and concomitant sanctions for failing to comply with those constraints under 250(IV)(E) and (H) unconstitutionally deny effective assistance of counsel to the death penalty appellants, and to non death penalty defendants represented by the public defender's offices whose cases would suffer because the public defenders would have to concentrate on death penalty appeals.

Plaintiffs also allege that Rule 250(IV)(H) denies persons that may be subject to the death penalty equal protection of the laws without a rational basis for doing so. Plaintiffs allege that appellants in non death penalty criminal cases receive at least seventy days to file an Opening Brief on Appeal under Nevada Rule of Appellate Procedure 31(a), while under Rule 250(IV)(H) defendants appealing a death penalty sentence receive only fifty days to file an Opening Brief.

Defendants counter that under minimum rationality, 250(IV)(H), which singles out death penalty appellants for special treatment, is rationally related to the legitimate state interest of ensuring that death penalty appeals are resolved efficiently. Defendants note that death penalty cases are more complex and require more care and attention than other cases. They posit that 250(IV)(H) furthers the goal of resolving death penalty cases more efficiently.

Plaintiffs assert that in practice, the Nevada Supreme Court traditionally has granted extensions of time to non death penalty cases under Rule 31(a) of the Nevada Rules of Appellate Procedure. Under Rule 250, however, the Court will grant extensions only upon "a showing of extraordinary circumstances or emergency condition." Plaintiffs argue that no rational basis exists for shortening the time for appealing a death penalty judgment as opposed to a non death penalty judgment, and subjecting death penalty defendants to harsher treatment, i.e., denying extensions of time and sanctioning a death penalty defendant's attorney for failing to comply with the time constraints. Additionally, Plaintiffs assert that the Nevada Supreme Court has applied 250(IV)(H) arbitrarily and capriciously, violating Plaintiffs' constitutional rights.

Next, Plaintiffs allege that Rule 250(III)(A)(3), requiring the district court judge, after the trial and penalty phases, to ask the defendant to state any objections he has to his trial counsel's performance, constitutes an impermissible infringement on the attorney-client relationship and jeopardizes a defendant's right to stand mute. Plaintiffs argue that asking the defendant to criticize his attorney may detrimentally affect the attorney's attitude in representing the defendant at sentencing or on appeal. This would implicate the defendant's constitutional right to effective assistance of counsel. Plaintiffs maintain that if a

defendant invokes the right to remain silent and against self incrimination, his failure to allege a specific claim or any claim may be construed as a waiver and later be used against him. Plaintiffs also assert that the lay defendant may not object to something simply because he does not know that a mistake has occurred. Finally, Plaintiffs claim this provision denies them equal protection because no rational basis exists to require only death penalty defendants to face this inquiry.

Defendants counter that legitimate reasons exist to offer death penalty defendants an opportunity to object to the performance of their attorneys. First, if an error has occurred, defendants argue, the trial judge more likely will be able to remedy the situation. Second, this procedure offers defendants the opportunity to make a claim of ineffective assistance of counsel at the earliest opportunity. Third, defendants allege that this provision has not been used to assert waivers of claims by defendants.

Finally, Plaintiffs aver that Section (F) of Rule 250(IV) violates their constitutional rights in requiring defense counsel to prepare and file a sealed memorandum indicating the nature and extent of the communications between counsel and the defendant, the degree of cooperation defendant exhibited, the services counsel furnished, and the investigation counsel performed. Plaintiffs allege that requiring trial counsel to prepare and file such a memorandum impermissibly infringes upon a death penalty defendant's right to effective assistance of counsel, violates the right to avoid self incrimination, and denies equal protection.

Defendants counter that this provision vastly increases a subsequent court's ability to evaluate claims of ineffective assistance of counsel. Since death penalty cases are more complex and time consuming than others, a memorandum detailing the defense lawyer's action allows a court to make an informed decision on an ineffective assistance of counsel claim. Further, the memo need contain only information relating to counsel's assistance, and re-

mains sealed unless defendant subsequently claims ineffective assistance of counsel.

## III. ABSTENTION DOCTRINES

Defendants assert that the Anti–Injunction Act, 28 U.S.C. § 2283, and the *Younger* abstention doctrine bar this court from hearing the merits of this case.

### A. *Anti–Injunction Act*

■ The Anti–Injunction Act provides that a federal court may not grant an injunction to stay proceedings in a state court. One exception states that a federal court may enjoin state proceedings if Congress has expressly so provided.

The United States Supreme Court has held that Congress provided an exception under 42 U.S.C. § 1983, under which plaintiffs sue. *Mitchum v. Foster*, 407 U.S. 225, 242–43, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972); *Miofsky v. Superior Court*, 703 F.2d 332, 335 (9th Cir.1983). Thus, Plaintiffs are exempted from the Anti–Injunction Act.

### B. *Younger Abstention*

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts should abstain from exercising federal jurisdiction if the exercise of jurisdiction would interfere with ongoing state court criminal proceedings, absent "extraordinary circumstances." *Id.* at 53, 91 S.Ct. at 755. The policy underlying *Younger* abstention is that state courts are perfectly capable of evaluating litigants' federal claims.

■ *Younger* applies when the state brings charges against defendant in state court, and then defendant brings a suit in federal court, becoming a civil plaintiff. To the extent plaintiffs are future criminal defendants, *Younger* does not apply because ongoing state court proceedings do not exist against these plaintiffs. However, we still must address the named plaintiffs' situation.

"Abstention under *Younger* is required if (1) there are pending state judicial pro-

ceedings, (2) the state proceedings implicate important state interests, and (3) the state proceedings provide an adequate opportunity to raise federal questions." *Polykoff v. Collins,* 816 F.2d 1326, 1332 (9th Cir.1987). A court should not abstain unless a plaintiff's constitutional claims can be "timely decided by a competent state tribunal." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).

■ Plaintiffs have raised a serious question as to whether state proceedings provide an adequate opportunity to raise federal questions, and whether a competent state tribunal timely can decide the issues. First, Plaintiffs challenge the state tribunal's own rules.

Second, since the rules are already in effect, a death penalty defendant is subject to the rules and cannot challenge them until appealing the conviction. Additionally, because of the time constraints and nature of the rules themselves, counsel for a death penalty appellant may not be able to cogently present all the constitutional arguments on direct appeal. Any issues not raised on direct appeal may be procedurally barred from being argued at a post conviction proceeding or from being reviewed in a state or federal petition for writ of habeas corpus. Essentially, a defendant would have to proceed through the entire appellate process before the Nevada Supreme Court would address the constitutional claims on the merits on a basis of cause and prejudice resulting from procedural default. If the Court denied the claims, the appellant would have to come back to federal court. A review on this basis would not be timely.

Further, extraordinary conditions exist making abstention inappropriate. Unlike *Younger,* this is not a case where the defense to a single criminal prosecution can eliminate the threat to a plaintiff's federally protected rights. This case involves a class of plaintiffs, some previously subjected to parts of the provisions of Rule 250 and others subject to the entire rule. Thus, one appellant's appeal cannot eliminate the threat.

Finally, since those subject to Rule 250 are death penalty defendants, special circumstances exist. The United States Supreme Court has "repeatedly stressed that because the death penalty is qualitatively different from any other criminal punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Williams v. Lynaugh,* 484 U.S. 935, 108 S.Ct. 311, 313, 98 L.Ed.2d 270 (1987) (quoting *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)). Since the state proceedings do not provide an adequate opportunity to present federal questions and have them timely decided for all individuals subject to the rules, *Younger* abstention is inappropriate.[1]

## IV. CERTIFICATION OF CLASS ACTION

■ Plaintiffs request that we certify this action as a class action, comprising "all persons who are, or may be, represented by the Nevada State Public Defender's Office and/or the Clark county Public Defender's Office, either at trial or on appeal, and are charged with capital offenses, or, who are, or may be, represented by the Appellate Division of the Nevada State Public Defender's Office and/or the Capital Murder Section of the Clark County Public Defender's Office" (Docket # 20, para. 7). While numerous individuals are named as plaintiffs in this action, only some of them are

---

1. In *Foster v. Kassulke,* 898 F.2d 1144 (6th Cir. 1990), the Sixth Circuit upheld the district court's decision to abstain from exercising federal jurisdiction under *Younger.* The *Foster* facts are distinguishable from our facts. *Foster* involved a single defendant challenging the videotape of her trial as an adequate record. Our case involves a class of plaintiffs, all subject to various provisions of Rule 250. Further, the *Foster* court found that state courts could eliminate the threat to plaintiff's federal rights because plaintiff failed to show more than an "incidental" injury from the court policy. In our case, plaintiffs demonstrate more than an incidental injury, given the nature of ultimate punishment.

directly affected by the new rules for proceeding in death penalty actions.[2]

Plaintiffs Riley and Libby already have been convicted and sentenced to death. They submitted their opening briefs on direct appeal after filing this action. Plaintiff Redman has been convicted and sentenced to death. Redman apparently has not begun his appeal. Whether these individuals have standing to obtain an injunction against enforcing certain provisions of Rule 250 is uncertain.

Plaintiff Weaver, however, is still in the pre-trial stage. He has been charged with a death penalty offense. The state has notified him that it will seek the death penalty. The trial court has informed Weaver that it will enforce the new rules and procedures.[3] Because Plaintiffs contest the constitutionality of several provisions of the new rule, some of which apply only at the trial level and others only at the appellate level, Plaintiff Weaver is the only individual with standing to contest all of the challenged provisions.[4] However, one representative is sufficient.

■ Fed.R.Civ.P. 23 governs class actions. Section (a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the represent-

ative parties will fairly and adequately protect the interests of the class. Plaintiff Weaver meets each of these four prerequisites.

First, since the proposed class encompasses future defendants facing the death penalty, the class consists of an infinite and uncertain amount of members. However, identifying members is practicable because while we do not know their identities now, we will as they become death penalty defendants. Second, questions of law or fact common to the class exist. For example, one common issue of law is whether the contested provisions deny plaintiffs equal protection.

Third, typicality exists. Plaintiff Weaver has standing to challenge all the contested procedures. Thus, his claims are typical of those of unnamed members. Fourth, since Weaver is a member of the class and has as much stake in the outcome as the unnamed members do, he can adequately represent their interests. Thus, Plaintiffs satisfy 23(a).

Plaintiffs must also satisfy one provision of Rule 23(b). The linchpin of this action is the constitutionality of certain provisions of Rule 250, namely that the provisions violate death penalty defendants' rights to due process and equal protection. The constitutionality of the provisions affects all death penalty defendants, including those who will be charged with capital offenses in the future, equally.

Rule 23(b)(1)(A) provides:

[T]he prosecution of separate actions by . . . individual members of the class

---

**2.** Some of the individuals are not charged with death penalty offenses. Some of the individuals have already been convicted and had their death penalty sentence affirmed on direct appeal, but are now collaterally attacking the validity of their conviction and/or sentence. Nevertheless, the public defenders argue that said individuals' rights to effective assistance of counsel are jeopardized because of the need to comply with the new rules in death penalty cases. This argument is specious at best. The impact on said individuals is only indirect, and could be remedied by adding more attorneys to the staffs.

**3.** On June 19, 1990, Plaintiff James Weaver was arrested and charged with Murder With the Use of a Deadly Weapon, and Robbery with the Use

of a Deadly Weapon. The State filed a "Notice of Intent to Seek the Death Penalty" against Plaintiff Weaver on September 25, 1990. The Sixth Judicial District Court has applied Rule 250 to Weaver's case by filing a copy of the rule with the clerk of the court and sending copies to both parties. The court has already inquired into Plaintiff Weaver's relationship and satisfaction with his trial counsel.

**4.** Plaintiffs Riley and Libby do not have standing to contest the validity of the rules that only apply at the trial level because the rules were not applicable at the time. Some, but not all, of the trial level procedures applied to Plaintiff Redman. Only Plaintiff Weaver faces all the contested procedures.

would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

In this case, we assume that Plaintiff Weaver, for example, brings a separate action challenging the constitutionality of the challenged provisions. If we upheld the constitutionality of the provisions, collateral estoppel would not bind a subsequent plaintiff in an action challenging the provisions' constitutionality since the subsequent plaintiff will not have been a party in the first suit.

While the doctrine of *stare decisis* most likely would compel us to uphold the constitutionality of the provisions in the subsequent suit, if the plaintiff ended up with a different United States District judge in this district, that judge could possibly and legitimately declare the provisions unconstitutional, without running afoul of *stare decisis*. In such a case, the Nevada Supreme Court would face incompatible standards—one holding the provisions constitutional, and other holding them unconstitutional. Thus, Plaintiffs satisfy (b)(1)(A).

Rule 23(b)(1)(B) states:

[T]he prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

We assume the same facts under the (b)(1)(A) discussion. Again, collateral estoppel would not bind a subsequent plaintiff to a finding of constitutionality. However, if the subsequent plaintiff ended up in this particular court, our previous finding of constitutionality would bind the subsequent plaintiff as a practical matter because of *stare decisis*. Thus, plaintiffs satisfy (b)(1)(B).

Rule 23(b)(2) provides:

[T]he party opposing the class has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Plaintiffs fall directly into this category. The party opposing the class, the Nevada Supreme Court, has acted on grounds applicable to all defendants facing Rule 250. Thus, injunctive relief, which Plaintiffs seek, will affect them all equally, whether the provisions are constitutional or unconstitutional. Therefore, Plaintiffs satisfy (b)(2).

Having determined that this action is certifiable as a class action under 23(a) and 23(b)(1)(A), (b)(1)(B) and (b)(2), we must define the class. Plaintiffs' counsel ask that the class consist of those individuals who are or may be represented by their respective offices and are charged with capital offenses. This, however, is too restrictive, because the contested provisions will apply to all individuals charged with capital offenses, not only those represented by both Public Defender's offices. Accordingly, the class shall consist of all individuals who are or will be directly subjected to Rule 250 of the Nevada Supreme Court Rules, with Plaintiff Weaver designated as the class representative.

## V. PRELIMINARY INJUNCTION STANDARD

To grant the preliminary injunction, we need not find that Plaintiffs will certainly prevail on the merits. Under the traditional rule, Plaintiffs must meet a four part test for us to grant the preliminary injunction. Plaintiffs must: (1) Make a strong showing (more than a reasonable probability) that they are likely to succeed on the merits; (2) Show that without the injunction, they will suffer irreparable injury; (3) Show that granting the stay will not cause substantial harm to defendants; and (4) Show that granting the stay will not harm the public interest.

In 1985, the Ninth Circuit described an alternate test for obtaining a preliminary injunction in *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374 (9th Cir.1985). The court held that in eval-

uating whether a preliminary injunction should issue, the movant could either meet the traditional test, or, in the alternative, meet the following test. If the movant could show that the balance of hardships tipped heavily in his favor, he only had to show a serious legal question going to the merits (as opposed to probability of success). The balance of hardships encompassed weighing the harm movant would suffer without the injunction against the harm the opposition would suffer if the court granted the injunction. In balancing the hardships, the court could also consider the public interest.

In labeling this a continuum, the court reasoned that the standard needed to be flexible. The lower the probability of success on the merits, the more injury (the further the balance had to tip in his favor) the movant would have to show. Similarly, the more likelihood that movant would prevail on the merits, the less injury he had to show. Other cases in the Ninth Circuit analyzed the preliminary injunction standard similarly to the continuum test before *Oakland Tribune. See, e.g., Ms. Universe v. Flesher*, 605 F.2d 1130, 1134 (9th Cir. 1979); *Inglis & Sons Baking v. ITT*, 526 F.2d 86 (9th Cir.1975).

In this case, Plaintiffs are entitled to a preliminary injunction for each contested provision under which they meet either the traditional or the alternate test. We now consider each contested provision of Rule 250.

## VI. SECTIONS (E) AND (H) OF RULE 250(IV)

### 1. Text of the Rules

Rule 250(IV)(E) provides:

The record on appeal shall be filed with the clerk of the supreme court not later than thirty (30) days from the date of entry of the judgment of conviction. Any extension of time beyond the thirty-day period will be granted only by order of the supreme court. The clerk of the district court shall take all reasonable steps to expedite transmission and docketing of the record on appeal with the supreme court. **Nev.Rev.Stat.Ann.Supreme Court Rule** 250(IV)(E) (Michie Supp.1990).

Rule 250(IV)(H) provides:

On appeal from the district court, absent extraordinary circumstances and consistent with the calendar of the supreme court, the matter shall be set for oral argument not later than one hundred eighty (180) days from the filing of the record on appeal with the clerk of the supreme court. The briefing schedule shall be as follows: from the date of the filing of the record on appeal, fifty (50) days for the appellant's brief, forty (40) days after the filing of the opening brief for the answering brief, and thirty (30) days thereafter for the reply brief. Extensions will be granted only by court order on a showing of extraordinary circumstances or emergency conditions. This court places the highest priority on diligence in the discharge of professional responsibility in capital cases. The undertaking of representation by counsel shall be a certification that counsel has the time, ability, resources and commitment to comply with the briefing and argument schedules. Sanctions may be imposed for a failure to comply with the schedule. **Nev.Rev.Stat.Ann.Supreme Court Rule** 250(IV)(H) (Michie Supp. 1990).

Plaintiffs argue that the mandatory time constraints and concomitant sanctions for failure to comply with those constraints are unconstitutional because they deny: (1) effective assistance of counsel to death penalty defendants and to non-death penalty defendants whose cases would receive less attention from the public defender's office; (2) due process; and (3) equal protection.

### 2. Equal Protection

The Fourteenth Amendment guarantees individuals equal protection of the laws. "The Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's

objective." *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). To conclude that the classification is permissible, we must find that the classification is "reasonable, not arbitrary, and rests[s] upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920).

Sections (E) and (H) of Rule 250(IV) differentiate between death penalty defendants and all other defendants. Rule 250 applies only to death penalty appeals whereas all other criminal appeals proceed under Rule 31(a) of the Nevada Rules of Appellate Procedure.

Since in this case the group singled out is death penalty defendants, who are not a suspect class, minimum rationality applies. Under this standard, Rule 250(IV)(E) and (H) must be rationally related to a legitimate state interest.

Under Rule 31(a), all non-death penalty criminal appellants have thirty days to file a notice of appeal. The clerk of the court then has forty days to transmit the record on appeal to the Supreme Court. In the past, state district courts have routinely extended the time for transmitting the record on appeal up to ninety additional days, thereby permitting the record on appeal to be filed anywhere from seventy to one hundred sixty days after entry of judgment of conviction. Appellants in all non-death penalty criminal cases then have forty days from filing the Record on Appeal to file an opening brief. A written stipulation with the State (which the State has always agreed to in the past) automatically extends that forty days an additional thirty days. Further, if appellants in non-death

penalty cases still require additional time, the Nevada Supreme Court has routinely granted extensions "for good cause clearly shown." Rule 31(a), Nev.R.App.P.

Under Rule 250(IV), Sections (E) and (H), the clerk must file the record on appeal in death penalty sentences no later than thirty days after the entry of judgment. Only the Nevada Supreme Court may authorize an extension of time. Stipulations are not permitted. Appellants then have fifty days to file an opening brief. The matter must be set for oral argument no later than one hundred eighty days from filing the record on appeal "absent extraordinary circumstances and consistent with the calendar of the supreme court." Rule 250(IV)(H). Further, "Extensions will be granted only by court order on a showing of extraordinary circumstances or emergency conditions. This court places the highest priority on diligence in the discharge of professional responsibility in capital cases." *Id.*[5]

Given the time constraints of the new rule, appellants in death penalty cases have only eighty days after entry of judgment to file an opening brief.[6] Appellants in all other criminal cases routinely have two hundred thirty days.[7] Further, Rule 250 requires the court to hear oral argument in death penalty appeals within one hundred eighty days after entry of judgment. The amount of time prior to oral argument in all other criminal cases is generally at least two hundred thirty days, plus the virtual guarantee of additional extensions.

## A. *250(IV)(H)*

■ We first determine the state's purported interest in enacting Rule 250(IV)(H). Defense counsel contended at oral argument that the time constraints in death penalty cases are necessary to speed the

---

**5.** At oral argument, counsel for Plaintiffs stated that he had been denied extensions of time for filing Plaintiff's Opening Brief and sanctions were pending for his failure to comply with the time limitations under Rule 250. The Nevada Supreme Court has ordered counsel to show cause why sanctions should not be imposed.

**6.** Thirty days to file the record and fifty days to file the opening brief.

**7.** Thirty days to file a notice of appeal, forty days for the clerk to transmit the record, ninety day time extension for transmitting the record granted by the district judge, forty days to file an opening brief, and an additional thirty day time extension pursuant to written stipulation by the parties.

appellate process in death penalty cases, thereby ensuring that these most important of cases receive careful scrutiny. Death penalty appeals, Defendants contend, have taken too long in the past to reach a final adjudication.

Speeding the process to render efficient dispositions is a legitimate state interest, considering the amount of time spent from the beginning of trial to imposition of sentence. However, the law must be rationally related to that legitimate interest. That is, the law must at least minimally further the interest.

Because death penalty trials are usually longer and more complex than other criminal trials, and because of the finality of the punishment, lessening the appellate briefing time for these "qualitatively different" cases to ensure that death penalty cases receive closer scrutiny by the Nevada Supreme Court does not appear to further the interest of deciding these cases more efficiently.

The disparate treatment of death penalty defendants does not rest "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Guano, supra,* at 415, 40 S.Ct. at 562. Rule 250 classifies death penalty appellants differently from all other criminal appellants, yet death penalty appellants are similarly situated for equal protection purposes. Further, if the overriding purpose of the Nevada Supreme Court is to improve the timeliness and efficacy of its appellate process, why did it only shorten the briefing schedule for death penalty appeals, often the most complex and always the most consequential cases, while permitting all other criminal appeals nearly twice the time? Section (H) appears neither to fairly nor substantially further the purpose of accelerating the Nevada appellate process.

Given the ultimate penalty of death, Plaintiffs face substantial irreparable injury without the injunction since all death penalty appellants must comply with (H). On the other hand, Defendants face little injury if we grant the preliminary injunc-tion. While the Nevada Supreme Court may be somewhat inconvenienced by an injunction, this harm does not compare to the serious and permanent damage that death penalty appellants will face under Section (H).

Further, since 250(IV)(H) probably does not rationally relate to a legitimate state interest, Plaintiffs show a probability of succeeding on the merits. Therefore, Plaintiffs are entitled to a preliminary injunction of (H), under either the traditional test or the continuum test, since it is probably violative of the equal protection clause of the Fourteenth Amendment.

### B. *250(IV)(E)*

■ Even though (E) also deals with time constraints, we treat it separately. The stated interest under (E) is the same as that under (H). Under (E), the clerk has thirty days to transfer the record on appeal. We must determine whether (E) furthers the goal of quickly and efficiently resolving death penalty cases.

Unlike (H), we conclude the (E) furthers that goal. Under 250(IV)(C), defense counsel receives daily transcripts of the case. The same is not true in non-death penalty cases. Thus, a legitimate reason exists to differentiate between death penalty and non-death penalty cases. Since defense counsel will obtain the trial transcripts on a daily basis, they need not wait until after entry of judgment to begin preparing the appeal, whereas in other cases, trial transcripts are not available until after entry of judgment of conviction.

Consequently, for (E), Plaintiffs cannot show probable success on the merits under the traditional test, nor can they show sufficient irreparable injury under the continuum test to warrant a preliminary injunction of (E) on equal protection grounds.

### 3. Due Process

■ Since we have concluded that Plaintiffs are entitled to an injunction of (H) on equal protection grounds, we consider Plaintiffs' due process claim for (E) only. To satisfy the due process requirement un-

der the Fourteenth Amendment, (E) must "comport with the deepest notions of what is fair and right and just." *Solesbee v. Balkcom,* 339 U.S. 9, 16, 70 S.Ct. 457, 460, 94 L.Ed. 604 (1950). In addition, it demands that a law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a reasonable and substantial relationship to the object being sought. Unlike equal protection, which considers a comparison of different treatments, due process considers whether treatment of an individual or group is fundamentally fair, without comparing such treatment to the treatment of others.

Thus, we must determine whether granting thirty days to transfer the record on appeal is fundamentally unfair to Plaintiffs. First, we must address the issue by considering (E) on its face. We have no evidence that thirty days is too little time to ensure fairness.

Second, there is a reasonable and substantial relationship between (E) and efficiently resolving death penalty cases. As stated, since defense counsel will be receiving daily transcripts of the trial, presumably not as much time is necessary to prepare the record for appeal. Thus, enacting (E) in conjunction with 250(IV)(C) both reasonably and substantially relates to quickly and efficiently resolving death penalty cases. Since Plaintiffs cannot show probability of success under the traditional test, nor irreparable injury under the continuum test, they are not entitled to a preliminary injunction of (E) on due process grounds.

### VII. RULE 250(III)(A)(3) AND (4)

#### 1. TEXT OF THE RULES AND ALLEGATIONS

■ Section (3) provides:

3. After submission of the case to the jury.

(a) While the jury is deliberating, the court shall give the defendant an opportunity to state any objections he may have to defense counsel, or to the manner in which defense counsel has conducted or is conducting the defense. This hearing shall take place outside the presence of the jury.

(b) If the trial proceeds to a penalty phase, the court shall, during the deliberations of the jury, give the defendant another opportunity to state any objections that he may have to defense counsel, or to the manner in which defense counsel has conducted or is conducting the defense. This hearing shall also be held outside the presence of the jury. **Nev.Rev.Stat.Ann.Supreme Court Rule** 250(III)(A)(3) (Michie Supp.1990).

Section (4) provides:

4. Proceedings without a jury.

(a) If the defendant enters a plea of guilty, the court shall, at the conclusion of the penalty hearing, give the defendant an opportunity to state any objections that he may have to defense counsel, or to the manner in which defense counsel has conducted or is conducting the defense. **Nev.Rev.Stat.Ann.Supreme Court Rule** 250(III)(A)(4) (Michie Supp.1990).

Plaintiffs allege that Sections (3) and (4) of Rule 250(III)(A) unconstitutionally chill the attorney-client relationship from the outset of the case, and thus implicate a defendant's right to effective assistance of counsel. They also allege that requiring the district judge to ask a death penalty defendant to evaluate trial counsel's performance infringes upon the defendant's right to remain silent during all proceedings against him, and subjects him to an allegation by the State that he has waived his right to assert the claim of ineffective assistance of counsel by failing to object.

Defendants contend that these provisions ensure that the death penalty defendant has the opportunity to claim ineffective assistance of counsel at the earliest opportunity so the trial judge may rule on the claim. If the defendant has received ineffective representation, the judge immediately can correct any errors and/or omissions, saving the defendant and the State time and money.

#### 2. Sixth Amendment Right to Effective Assistance of Counsel

"[T]he [constitutional] right to the assistance of counsel has been understood to

mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." *Herring v. New York*, 422 U.S. 853, 857, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975). A defendant has received ineffective assistance when a court finds that counsel's conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In this case, Plaintiffs assert that requiring a defendant to note objections to counsel's performance during the trial would chill the attorney-client relationship, rendering counsel's performance ineffective. Further, a defendant's criticisms of counsel, Plaintiffs argue, would necessarily affect counsel's ability to effectively represent the defendant.

Evaluating these claims reveals that Plaintiffs do not allege specific errors that could occur. Rather, they describe circumstances that allegedly give rise to a necessary finding of ineffective assistance of counsel. The Supreme Court faced an analogous situation in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

In *Cronic*, the trial court appointed an inexperienced lawyer on very short notice to represent a criminal defendant. Defendant was convicted. In claiming ineffective assistance of counsel, defendant argued not that counsel had committed any specific error. Rather, defendant alleged that five factors—a short time to prepare for trial, inexperience of counsel, gravity of the charge, complexity of possible defenses, and the inaccessibility of witnesses to counsel—created circumstances mandating a finding of ineffective assistance of counsel.

The Court of Appeals accepted this argument:

No such showing (that the lawyer made any specified errors, that actual performance prejudiced the defense, or that the lawyer failed to exercise "the skill, judgment, and diligence of a reasonably competent defense attorney") is necessary when circumstances hamper a given lawyer's preparation of a defendant's case. *Id.* at 650, 104 S.Ct. at 2042. The Court of Appeals added that no actual breakdown of the adversarial process was required, only circumstances implying ineffective assistance. *Id.* at 657–58, 104 S.Ct. at 2046.

The Supreme Court reversed. The Court acknowledged that some surrounding circumstances make "it so unlikely that any lawyer could provide effective assistance that ineffectiveness [is] properly presumed without inquiry into actual performance." *Id.* at 661, 104 S.Ct. at 2048. However, this situation is very limited and applies only when counsel is completely denied or when a breakdown in the adversarial process, such as failure to cross examine, occurs. The Court held that defendant's showing fell short of such a requirement. *Id.* at 663, 104 S.Ct. at 2049.

Plaintiffs contend that application of the rule will result in interference with the attorney-client relationship. While one might speculate that interference in the attorney-client relationship might occur, here we address only facial unconstitutionality.

At this stage we have no evidence from which we can conclude that a defendant's objections will chill the relationship between client and attorney or affect an attorney's ability to represent defendant to the best of his ability. There is no evidence in the record that defendant's objections would affect counsel's representation. In fact, under 250(III)(A)(3)(b) and (4),[8] by the time defendant makes these objections, counsel's trial duties will have ended.

Thus, we conclude that Rules 250(III)(A)(3) and (4) on their face do not implicate a defendant's Sixth Amendment right to counsel because, under *Cronic*,

---

**8.** Under (3)(b), defendant makes his objections while the jury is deliberating the penalty. Under (4), defendant makes his objections after the penalty hearing.

Plaintiffs have not alleged circumstances making it so unlikely that any lawyer could provide effective assistance that ineffectiveness is properly presumed without inquiry into actual performance.

### 3. Fifth Amendment Right Against Self–Incrimination and Right to Remain Silent

Plaintiffs allege that (3) and (4) infringe upon a defendant's right to stand mute during all proceedings against him. We assume Plaintiffs allege a violation of the right against self-incrimination. "[T]he Fifth Amendment to the Constitution of the United States command[s] that no person 'shall be compelled in any criminal case to be a witness against himself.' " *Bram v. United States,* 168 U.S. 532, 542, 18 S.Ct. 183, 186, 42 L.Ed. 568 (1897). In effect, the Fifth Amendment protects against compulsory incrimination from coercion.

In this case, Sections (3) and (4) of Rule 250(III)(A) do not compel a defendant to make a statement. They merely allow a defendant the opportunity to make a statement. Therefore, a defendant need not make a statement. Since we attempt to interpret the provisions to find, if possible, a constitutional interpretation, facially, these provisions do not violate the constitutional right against compulsory self-incrimination.[9]

Plaintiffs argue that if defendant does not make objections or leaves some out, the state later will construe defendant's complete silence or silence as to a specific claim as a waiver of that claim of ineffective assistance of counsel and use that waiver in a later proceeding. If the State uses the defendant's failure to make such a statement as a waiver, constitutional concerns will arise because the waiver of a constitutional right requires a voluntary and intelligent relinquishment of a known right. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Presuming a waiver from inaction or silence is inconsistent with the definition of a waiver. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

This use of a defendant's failure to raise a claim is of particular concern because Sections (3) and (4) do not contain a warning that failure to raise a claim may be used as a waiver of that claim. Thus, a defendant's right against self-incrimination may be violated by such an application of the provisions. However, at this early stage of the litigation, we have no evidence that the state is using the provisions to argue waiver.

Since "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal ...," *Johnson v. Zerbst,* 304 U.S. 458, 462–63, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938), and needs "the guiding hand of counsel at every step in the proceedings against him," *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), the defendant may not know of objectionable material. However, this does not hurt defendant if failure to raise an objection is not a waiver of such objection. Again, since we have no evidence of how the state is applying (3) and (4), a preliminary injunction on Fifth Amendment grounds is inappropriate at this time since Plaintiffs cannot satisfy either test. If at a later time, Plaintiffs present evidence of

---

**9.** We feel some concern over the possible practical effects of 250(III)(A)(3) and (4). While only speculation and not grounds to strike down the provisions exists at this time, (3) and (4) practically might create perilous positions for both attorney and defendant.

The attorney faces a conflict of interest. To ensure the best representation possible, the attorney should advise defendant to raise genuine complaints. However, an attorney has an understandable self interest in his or her own performance. Further, often times a defendant's best and least risky strategy is to remain silent.

Untrained defendants are quite liable to make statements disastrous to their well being. For example, a defendant might make a statement incriminating himself in another crime. Further, if defendant makes a statement while the jury is deliberating guilt, nothing in 250(III)(A) precludes the prosecution from using that statement against defendant in the penalty phase.

A defendant is entitled to representation throughout the litigation. While we have no evidence practically that representation is denied because of 250(III)(A), we note that these problems could arise.

unconstitutional application of (3) and (4), we will address the problem.

### 4. Equal Protection

██ Using the standard of review delineated under the equal protection section of Rule 250(IV)(E) and (H), we find a rational basis for treating a death penalty defendant differently from all other criminal defendants by allowing a death penalty defendant to make a voluntary statement concerning trial counsel's performance.

Given the harshness of the punishment, the complexity and length of the issues, and the frequency of the claim of ineffective assistance of counsel in death penalty appeals and/or post-conviction relief hearings, the state has a legitimate interest in correcting trial errors at an early stage, when facts are fresh. Provisions (3) and (4) are rationally related to that interest because the defendant has an opportunity to raise the claim immediately after trial, permitting the judge to evaluate the claim and effect a remedy. Catching the ineffective representation at the earliest opportunity will save the State and the defendant time and money.

Consequently, Plaintiffs have failed to meet either preliminary injunction standard for Rule 250(III)(A)(3) and (4) on any ground. Thus, we will not preliminarily enjoin enforcement of those sections.

### VIII. RULE 250(IV)(F)

#### 1. Text of the Rule

██ Rule 250(IV)(F) provides:

Within ten (10) days after the imposition of sentence, defense counsel shall prepare and file with the clerk of the court a sealed original and give to the defendant a copy of a detailed memorandum showing the following: services furnished to defendant, the nature and extent of communications with defendant, the degree of cooperation furnished by defendant, and the investigation performed. The memorandum shall specifically state the names of any witnesses suggested by the defendant to counsel. If those witnesses were not called at trial, the memorandum shall state with particularity the reasons such witnesses were not called. The memorandum on file in the clerk's office may be unsealed only after the defendant makes a claim of ineffective assistance of counsel or the supreme court directs, pursuant to subsection I below, a hearing relating to the effectiveness of defendant's counsel. Defense counsel shall advise the trial judge and the prosecution when the memorandum has been filed. This memorandum shall be admissible in subsequent proceedings relating to the effectiveness of counsel. **Nev. Rev.Stat.Ann.Supreme Court Rule** 250(IV)(F) (Michie Supp.1990).

Plaintiffs allege that this provision unconstitutionally intrudes upon the attorney-client relationship, implicating the defendant's right to effective assistance of counsel. Plaintiffs also argue that a defendant's privilege against self-incrimination is breached because attorney-client communications that relate to uncharged or unconvicted illegal acts by the defendant may be disclosed. In addition, Plaintiffs assert a violation of equal protection because defendants in other criminal cases do not face a similar provision.

Defendants maintain that this provision is necessary to assist the Nevada Supreme Court in reviewing claims of ineffective assistance of counsel. In the past, reviewing such claims was difficult because by the time the Nevada Supreme Court heard the claim, trial or appellate counsel had become unavailable for questioning, unable to remember details of the representation, and/or the record did not contain the needed information to properly assess the claim.

#### 2. Ineffective Assistance of Counsel

As previously stated, the right to the assistance of counsel guarantees that "there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." *Herring, supra,* 422 U.S. at 857, 95 S.Ct. at 2553. Given this definition, we first must determine the scope of the "detailed memoran-

dum" that Section (F) requires defense counsel to submit to the clerk of the court.

Pursuant to basic rules of constitutional interpretation, we must read the rule, if possible, in such a manner as to give it a constitutional interpretation. Section (F) requires defense counsel to file a memorandum describing what services counsel furnished, the nature and extent of any communications between counsel and defendant, and the type of investigation counsel performed. In addition, counsel must include the names of all witnesses offered by the defendant, and explain why any of those witnesses did not testify.

To the extent the language of Section (F) is limited to information relevant to adjudicating a claim of ineffective assistance of counsel, (F) is constitutional under the Sixth Amendment.

Under this interpretation, an attorney does not have to include confidential communications or information irrelevant to a claim of ineffective assistance of counsel. Interpreted in this manner, the provision does not violate the defendant's constitutional right to effective assistance of counsel because the attorney-client relationship would not be jeopardized. A client could confide in his attorney about information relating to his defense without being afraid that this potentially incriminating information would be used against him if the memorandum were unsealed.

To the extent that the rule requires the memorandum to remain sealed unless the defendant makes a claim of ineffective assistance of counsel or the Nevada Supreme Court directs its unsealing pursuant to a hearing on the effectiveness of defense counsel, (F) is constitutional under the Sixth Amendment. Only at that time will the memorandum become admissible in subsequent proceedings. Read this way, the rule protects the defendant against inadvertent disclosure of any confidential communications made to his attorney. The information becomes public only at defendant's insistence. Therefore, we find no facial violation of the Constitution by (F).

This provision may implicate the defendant's Sixth Amendment right to effective assistance of counsel based upon state interference with the attorney-client relationship. In this provision, the Nevada Supreme Court requires defense counsel to engage in action that may impact upon the attorney-client relationship. However, such a concern would not arise because the memorandum is unsealed only if defendant makes a claim of ineffective assistance. Further, only information relevant to the asserted grounds would be released. This does not appear to detrimentally impact on any attorney-client communications. Considering that all information relevant to a claim of ineffective assistance would become public anyway once defendant makes the claim, whether the information comes from the memorandum or from other sources does not matter.

### 3. Equal Protection

Considering the frequency of claims of ineffective assistance in death penalty cases and the duration of the appellate process, a rational basis exists to treat death penalty defendants differently from criminal defendants. Death penalty cases are often complex and lengthy, permitting trial counsel a multitude of reasonable strategies or tactics to choose from. A death penalty defense attorney, therefore, often faces allegations of ineffective assistance for not choosing a strategy that in hindsight appears more reasonable.

Requiring defendant's trial counsel to provide information relating to potential claims of ineffective assistance of counsel while the attorney's memory is fresh and relevant information is at hand is reasonable to assist the court in reviewing such a claim. Therefore, a rational reason exists to treat death penalty defendants differently from all other criminal defendants. Thus, there is no violation of equal protection. Consequently, a preliminary injunction of 250(IV)(F) shall not issue.

### IX. CONCLUSION

We make the following findings:

1. This action should be certified as a class action, with the class defined as all

individuals who are or will be directly subjected to rule 250 of the Nevada Supreme Court Rules, with Plaintiff Weaver as the class representative.

2. Plaintiffs have shown under both tests that they are entitled to a preliminary injunction of Section (H) of Rule 250(IV) as violative of Plaintiffs' constitutional right to equal protection. Plaintiffs have not made the requisite showing for 250(IV)(E).

3. Sections (3) and (4) of Rule 250(III)(A) on their face do not violate Plaintiffs' constitutional rights to equal protection or due process.

4. Section (F) of Rule 250(IV) on its face does not violate Plaintiffs' constitutional rights to equal protection or due process.

IT IS, THEREFORE, HEREBY ORDERED that Plaintiffs' request that this action be certified as a class action is GRANTED. This action is hereby certified as a class action pursuant to Fed.R.Civ.P. 23. The class contains all individuals who are or will be directly subjected to Rule 250 of the Nevada Supreme Court Rules. Plaintiff Weaver is the class representative.

IT IS FURTHER ORDERED that pursuant to this Order and Preliminary Injunction, the caption regarding the Plaintiffs is amended to read as follows: "JAMES WEAVER, individually and on behalf of all individuals who are or will be directly subjected to Rule 250 of the Nevada Supreme Court Rules, Plaintiffs." All further documents filed herein shall bear such caption.

IT IS FURTHER ORDERED that Plaintiffs' Motion for a Preliminary Injunction is GRANTED as to Rule 250(IV)(H), and DENIED as to Rule 250(IV)(E), Rule 250(III)(A)(3) and (4), and Rule 250(IV)(F) of the Nevada Supreme Court Rules.

IT IS FURTHER ORDERED that based on the findings and conclusions in this Order and Preliminary Injunction, The Nevada Supreme Court, its justices, officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are hereby enjoined and restrained from enforcing Rule 250(IV)(H) of the Nevada Supreme Court Rules.

IT IS FURTHER ORDERED that pursuant to Fed.R.Civ.P. 65(c), since plaintiffs are proceeding *in forma pauperis*, and would effectively lose their access to judicial review if we required security, *People ex. rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir.1985), Plaintiffs shall not be required to post security for the issuance of the Preliminary Injunction. *Id.*

## SUPPLEMENTARY ORDER

■ This order supplements our Order and Preliminary Injunction dated February 8, 1991. Three members of the plaintiff class, Riley, Felder and Redman, assert that Rule 250 does not apply to them because their cases began before June 1, 1990, the day Rule 250 became effective. Therefore, these plaintiffs argue, the Nevada Supreme Court cannot apply Rule 250 retroactively to them.

Article 6, Section 4 of the Nevada Constitution and § 2.120 of NRS grant the Nevada Supreme Court absolute control over rules of procedure in their court. Further, Rule 31 of the Appellate Rules of Procedure contain briefing guidelines that give the Court discretion to give extensions and shorten time periods provided for in the Rules. The Nevada Supreme Court "may shorten the periods prescribed ... for serving and filing briefs, either by rule for all cases or for classes of cases, or by order for specific cases." *Id.*

Under these rules and the Nevada Constitution, the Supreme Court may change the time periods to in effect, mirror Rule 250. Thus, the Court may apply Rule 250 to Riley, Felder and Redman. We note that in reaching this conclusion, we express no opinion on the constitutionality of any provision of Rule 250. We merely hold that no retroactivity problem exists as to Riley, Felder and Redman. For a discussion of the constitutionality of various parts of Rule 250, see our Order and Preliminary Injunction dated February 8, 1991.

IT IS, THEREFORE, HEREBY ORDERED that Rule 250 of the Nevada Su-

preme Court Rules, to the extent that it is constitutional, shall apply to plaintiffs Riley, Felder and Redman.